Opinion issued June 21, 2007 









Opinion issued June 21, 2007 








 

 

 

 

 




 

 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NOS. 01-06-00694-CV

01-07-00126-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



LMC COMPLETE AUTOMOTIVE, INC., Appellant

 

V.

 

RONALD BURKE, Appellee

 

 



On Appeal from the 127th District Court

Harris County, Texas

Trial Court Cause No. 2004-21750








 

 



O P I N I O N

 

In this nonsubscriber negligence
case, LMC Complete Automotive, Inc. (LMC) appeals a jury verdict and judgment
of $155,000 in favor of its employee, appellee Ronald Burke.  LMC contends (1)
the evidence is legally insufficient to support the jury’s negligence finding, (2)
Burke’s causation evidence is not sufficiently reliable to support the jury’s
negligence finding, and (3) the trial court abused its discretion in excluding
evidence that Burke received compensation for his injury from collateral
sources.  We conclude that the evidence is legally
sufficient and sufficiently reliable to support the jury’s negligence finding,
and the trial court did not abuse its discretion in excluding the evidence that
Burke received compensation for his injury from collateral sources.  We
therefore affirm the trial court’s judgment.  

We also address LMC’s motion, filed
in this court, to waive or decrease the security required to suspend
enforcement of the trial court’s judgment on appeal, as well as LMC’s contest
of the trial court’s findings of fact on the security issue.  With respect to
the amount of a supersedeas bond, we conclude that
the record does not support the trial court’s findings that LMC has sufficient
net worth to secure the full amount of the judgment while the case is on
appeal.  Pursuant to Rule 24 of the Texas Rules of Appellate Procedure, we set
LMC’s net worth at $149,736.04, vacate the
trial court’s July 25, 2006 order denying LMC’s motion to decrease the security required to suspend enforcement of the judgment,
and order that the security for supersedeas for LMC
be set at $74,868.02, fifty percent of LMC’s net worth.  Our order entered on
February 15, 2007, staying the enforcement of the judgment in this case, will
remain in effect for fifteen days after the date this opinion is issued to
allow the parties to seek further review of our security determination.  We
dismiss LMC’s second appeal, related to the trial court’s findings of fact on
the security issue, for want of jurisdiction.

Background

LMC is an auto repair
shop.  Burke worked for LMC as a body repair man.  Mario Ramirez also worked
for LMC, as a porter, and his job duties included cleaning and moving vehicles
around the shop.  

We recite the facts,
which were hotly contested at trial, in a light favorable to the jury’s
verdict.  In April 2003, Burke was working on a vehicle at LMC when he heard a
noise.  Burke looked up and saw another vehicle rolling out of the shop with
the driver’s side door open.  Ramirez was hanging onto the door and the steering
wheel and the vehicle was dragging him outside.  Apparently, Ramirez was
attempting to push the vehicle into the shop by himself when he lost control of
it.  Burke ran in front of the vehicle and stopped it by hand.  Burke
immediately experienced pain in his back, but he initially thought that he had
just strained some muscles.  Ramirez, Burke, and a third employee then pushed
the vehicle into the shop.  Burke told a manager about the incident and went
home immediately because of his back pain.  Burke eventually sought medical
treatment, including two back surgeries, due to the injury. 

Before the incident with
the vehicle, Burke witnessed Ramirez engage in other negligent acts while
working at LMC.  On one occasion, Ramirez drove an SUV into the shop too quickly,
but Burke managed to stop him just before he ran over another employee.  On
another occasion, Ramirez placed an open can of gasoline near an employee who
was welding.  Burke quickly moved the can to prevent an accident.  On a third
occasion, Burke saw Ramirez using an electric buffer with the extension cord
running through a pool of water.  Burke warned Ramirez to move the extension
cord but he continued buffing.  Burke reported each of these incidents to
management at LMC, but he never saw anyone say anything to Ramirez.  LMC did
not hold organized safety meetings.  

Negligence

In its first issue, LMC
contends the evidence is legally insufficient because no evidence exists to
support the jury’s negligence or proximate cause findings.  In its second,
related issue, LMC contends that it was entitled to a JNOV because the treating
physician’s expert testimony as to the cause of Burke’s injuries is
unreliable.  

 

A. Standard of Review

The test for legal sufficiency is
“whether the evidence at trial would enable reasonable and fair-minded people
to reach the verdict under review.”  City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005).  In making this determination, we credit favorable
evidence if a reasonable fact-finder could, and disregard contrary evidence
unless a reasonable fact-finder could not.  Id.  So long as the
evidence falls within the zone of reasonable disagreement, we may not
substitute our judgment for that of the fact-finder.  Id. at 822.  The
trier of fact is the sole judge of the credibility of the witnesses and the
weight to give their testimony.  Id. at 819.  Although we consider the
evidence in a light most favorable to the challenged findings, indulging every
reasonable inference that supports them, we may not disregard evidence that
allows only one inference.  Id. at 822.

B.  Nonsubscribers and
Negligence

LMC is a nonsubscriber to
the Texas Workers’ Compensation Act.  Tex.
Lab. Code Ann. § 406.002 (Vernon 2006) (“Except for public employers and
as otherwise provided by law, an employer may elect to obtain workers’
compensation insurance coverage.”).  “In an action . . . against an employer
who does not have workers’ compensation insurance coverage, the plaintiff must
prove negligence of the employer or of an agent or servant of the employer
acting within the general scope of the agent’s or servant’s employment.”  Id. § 406.033(d) (Vernon 2006).  Contributory negligence is not a defense in nonsubcriber
cases.  Id. § 406.033(a)(1); Kroger
Co. v. Keng, 23 S.W.3d 347,
352 (Tex. 2000).

A negligence cause of
action has three elements: (1) a legal duty owed by one person to another, (2)
a breach of that duty, and (3) damages proximately caused by the breach.  D.
Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex. 2002).  “Proximate cause
requires both cause in fact and foreseeability.”  Id.  Foreseeability
exists if the actor, as a person of ordinary intelligence, should have
anticipated the dangers his negligent act creates for others.  Id.  “Foreseeability
does not require that a person anticipate the precise manner in which injury
will occur once he has created a dangerous situation through his negligence.”  Travis v. City of Mesquite, 830
S.W.2d 94, 98 (Tex.
1992).  “Cause in fact means that the defendant’s act or omission
was a substantial factor in bringing about the injury which would not otherwise
have occurred.”  Union Pump Co. v. Allbritton, 898 S.W.2d 773, 775 (Tex. 1995); accord Henry v. Houston Lighting & Power Co., 934 S.W.2d 748, 750 (Tex.
App.—Houston [1st Dist.] 1996, writ denied).

An employer has a duty to use ordinary care in
providing a safe workplace.  See Kroger Co. v. Elwood, 197
S.W.3d 793, 794 (Tex.
2006); Farley v. M M Cattle Co.,
529 S.W.2d 751, 754 (Tex. 1975).  “It must, for example, warn an employee of
the hazards of employment and provide needed safety equipment or assistance.”  Elwood, 197 S.W.3d at 794; Farley,
529 S.W.2d at 754.  An employer must furnish safe machinery and
instrumentalities with which its employees are to work and provide adequate
assistance under the circumstances for the performance of required work.  See
Humble Sand & Gravel, Inc. v. Gomez, 146 S.W.3d 170, 186 n.45 (Tex. 2004);
Werner v. Colwell, 909 S.W.2d 866, 869 (Tex. 1995); Farley,
529 S.W.2d at 754.  An employer must also instruct
employees in the safe use and handling of products and
equipment used in and around an employer’s premises or facilities, and
adequately hire, train, and
supervise employees.  Patino v. Complete Tire, Inc., 158 S.W.3d 655, 660
(Tex. App.—Dallas 2005, pet. denied); Castillo v. Gared, Inc., 1 S.W.3d
781, 786 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

An employer, however, is not an insurer of its
employees’ safety.  Elwood, 197 S.W.3d at 794; Leitch
v. Hornsby, 935 S.W.2d 114, 117 (Tex. 1996); Exxon Corp. v. Tidwell, 867 S.W.2d 19, 21 (Tex. 1993).  An employer owes no
duty to warn of hazards that are commonly known or already appreciated by the
employee and no duty to provide
equipment or assistance that is unnecessary to the job’s safe performance.  Elwood, 197 S.W.3d at 794–95. 
An employer also has no duty to provide assistance if an employee’s injury
results from performing the same character of work that employees in that
position have always done, and there is no evidence that the work is unusually
precarious.  Id. at 795; Werner,
909 S.W.2d at 869.

C.  Evidence of Negligence

The evidence Burke
presented is legally sufficient to support the jury’s negligence finding.  The
evidence is undisputed that both Ramirez and Burke were employees of LMC in
April of 2003.      

Burke’s status as an employee of LMC gave rise
to LMC’s duty to exercise ordinary care in providing a safe workplace.  See Elwood, 197
S.W.3d at 794; Farley,
529 S.W.2d at 754.  Ramirez was acting in the course and scope of his
employment when he was pushing the vehicle because his duties included moving
vehicles around LMC’s premises.  The evidence is also undisputed that LMC did
not hold safety meetings or train its employees on how to move vehicles.  The
jury was entitled to conclude that Ramirez was negligent in losing control of a
vehicle while standing outside the vehicle to move it, and in failing to use
ordinary care to ensure that the vehicle was moved safely within LMC’s premises. 
See, e.g., Brookshire Grocery Co. v.
Goss, 208 S.W.3d 706, 723 (Tex.
App.—Texarkana 2006, no pet.) (evidence was legally sufficient to support
finding that employer breached its duty to provide safe workplace). 
Because Ramirez was an employee acting in the course and scope of his
employment, his negligence constituted a breach of LMC’s duty to use ordinary
care in providing a safe workplace.  See Tex. Lab. Code Ann. § 406.033(a)(3)
(Vernon 2006) (“In an action against an employer who does not have workers’
compensation insurance coverage to recover damages for personal injuries or
death sustained by an employee in the course and scope of the employment, it is
not a defense that . . . the injury or death was caused by the negligence of a
fellow employee.”); Elwood, 197
S.W.3d at 794 (holding that employer has nondelegable duty to provide safe
workplace).  Additionally, based on
LMC’s knowledge of Ramirez’s previous action in nearly losing control of a
vehicle within the shop, the jury was rationally justified in finding that
moving vehicles within LMC’s premises posed a foreseeable risk of harm to
nearby employees.  See Travis, 830 S.W.2d at 98 (“Foreseeability
does not require that a person anticipate the precise manner in which injury
will occur once he has created a dangerous situation through his negligence.”). 
We hold that the evidence presented would enable
reasonable and fair-minded people to reach the verdict under review.  See
City of Keller, 168 S.W.3d at 827.  The
evidence is therefore legally sufficient to support the jury’s negligence
finding.

D.  Causation and the
Reliability of the Expert Testimony

LMC contends that Burke’s expert evidence that Ramirez’s
negligence in losing control of a moving vehicle caused Burke’s back injury is
not sufficiently reliable to support the jury’s negligence finding, and that no
evidence supports the jury’s causation finding.  Burke
underwent two back surgeries after the accident at LMC.  Dr. Thomas Mims was
one of Burke’s treating physicians and he participated in both of Burke’s
surgeries.  Burke told Mims that he thought the accident at LMC might have
caused his back injury.  Burke also testified that he never experienced back
pain before the accident.  A myelogram X-ray of Burke’s lower back revealed
that he had a herniated disc.  Mims testified that the accident at LMC could
have caused Burke’s injury, and the injury was consistent with the accident. 
Mims also testified that, within a reasonable degree of medical certainty, the
accident at LMC caused Burke to have to undergo the two surgeries.  Mims
testified that it is common for doctors to rely on the reports of patients in
determining the cause of an injury.  

LMC asserts that Mims’s testimony is unreliable
because he based his causation opinion on Burke’s statements instead of
entirely scientific proof.  The following exchange occurred at trial:

[Defense Counsel:] Can you point to any scientific evidence that
any of the treatment that was provided to Mr. Burke was necessitated by
something that happened on April the 11th, 2003?

 

[Dr. Mims:] Counselor, I’m not really sure—can you phrase your
question in another way?

 

[Defense Counsel:] I don’t know.  What—help me a little bit.

 

[Dr. Mims:] Well, scientific evidence, we have got a gentleman
with a ruptured lumbar disc.  We have got a gentleman that was in severe pain. 
And he says it occurred when it [sic] had the accident.  I mean, I wasn’t
there.  We don’t have an MRI scan directly before that particular injury.  We
are having to rely upon his statements.  Scientific evidence—other than an MRI
scan that shows, an MRI scan, a myelogram that shows a ruptured disc, under
that kind of a context, no.  I don’t know that I can say that he would have any
scientific evidence.  But that would be the way it would be, you know,
implicating at least that particular injury, other than the fact that
throughout the years, we know that you can hurt your back with any type of an
injury, including the type was [sic] described.

 

[Defense Counsel:] Do I understand you to say that you are basing
your opinion that this man’s medical treatment was necessitated by something
that happened on April of 2003, that that opinion is based on what he told you?

 

[Dr. Mims:] Based upon what he said as time went on, that this is
how he hurt his back, yeah.

 

[Defense Counsel:] Okay.  Now that’s not scientific, though, is
it?

 

[Dr. Mims:] No.

 

To establish causation in a personal injury
case, a plaintiff must prove the defendant’s conduct caused an event, and that
event caused the plaintiff to suffer compensable damages.  Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995).  The causal link
between the event sued upon and the plaintiff’s injury must be shown by
competent evidence.  Morgan v. Compugraphic Corp., 675 S.W.2d 729, 732 (Tex. 1984).  A jury may decide the required causal nexus between the event sued upon and the
plaintiff’s injuries when (1) general experience and common sense will enable a
layperson fairly to determine the causal nexus; (2) expert testimony
establishes a traceable chain of causation from injuries back to the event; or
(3) expert testimony shows a probable causal nexus.  Keo v. Vu, 76 S.W.3d 725, 731
(Tex. App.—Houston [1st Dist.] 2002, pet. denied); Weidner v. Sanchez,
14 S.W.3d 353, 370 (Tex. App.—Houston [14th Dist.] 2000, no pet.);
see also Morgan,
675 S.W.2d at 732.

To constitute evidence of causation, a medical
expert’s opinion must rest in reasonable medical probability.  Crye, 907
S.W.2d at 500; Ins. Co. of N. Am. v. Myers, 411
S.W.2d 710, 713 (Tex. 1966).  This rule applies whether the opinion is
expressed in testimony or in a medical record, as the need to avoid opinions
based on speculation and conjecture is identical in both situations.  Crye,
907 S.W.2d at 500.  Reasonable probability is determined by the substance and
context of the opinion and does not turn on semantics or on the use of a
particular term or phrase.  Id.; Myers, 411 S.W.2d at 713.

An expert must base his opinion on facts or data
perceived or reviewed during or before trial.  Tex. R. Evid. 703; Onwuteaka v. Gill, 908 S.W.2d 276,
283 (Tex. App.—Houston [1st Dist.] 1995, no writ).  The weakness of facts in
support of an expert’s opinion generally goes to the weight of the testimony
rather than the admissibility.  Onwuteaka, 908 S.W.2d at 283. 
Nevertheless, an expert’s opinion regarding causation that is based completely
upon speculation and surmise amounts to no evidence.  Id.; see also
Schaefer v. Tex. Employers’ Ins. Ass’n, 612 S.W.2d 199, 204–05 (Tex. 1980) (holding that expert’s medical opinion constituted no evidence because it was based
upon speculation and surmise rather than reasonable medical probability).  “If
the foundational data underlying opinion testimony are unreliable, an expert
will not be permitted to base an opinion on that data because any opinion drawn
from that data is likewise unreliable.”  Merrell Dow Pharm., Inc. v. Havner,
953 S.W.2d 706, 714 (Tex. 1997).  Expert testimony is unreliable if “there is
simply too great an analytical gap between the data and the opinion
proffered.”  Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 727 (Tex. 1998) (quoting Gen. Elec. Co. v.
Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 519 (1997)).  “We are not required . . . to ignore fatal gaps in an expert’s
analysis or assertions that are simply incorrect.”  Volkswagen of Am., Inc.
v. Ramirez, 159 S.W.3d 897, 912 (Tex. 2004).  
          Here, Dr. Mims testified that he is a board certified neurosurgeon
and has been practicing for over twenty years.  As a neurosurgeon, Mims treats
back injuries.  Mims participated in both of Burke’s back surgeries, and
testified that he has performed the same types of surgeries many times on other
patients.  Specifically, Mims testified that he has performed Burke’s first
surgery about 1500 times, and the second surgery about 150 times.  Mims took a
medical history from Burke and examined him on multiple occasions.  The record therefore
includes evidence that Burke’s injury was within Mims’s realm of expertise.  Cf.
Gammill, 972 S.W.2d at 719 (holding that
district court did not abuse its discretion in excluding testimony of
mechanical engineer in products liability case involving automobile because
expert did not have specific experience regarding subject matter of lawsuit); Broders v. Heise, 924 S.W.2d
148, 149 (Tex. 1996) (holding that district court did not abuse its
discretion in excluding plaintiffs’ expert’s opinion on causation because while
expert plainly had greater knowledge of medicine generally than lay person, he
did not have specialized knowledge on precise subject of causation).  

Mims testified that it is
common for doctors to rely on a patient’s history in determining the cause of
an injury.  See Tex. R. Evid.
703.  Burke told Mims that he thought the accident at LMC might have caused his
back injury, and he started experiencing pain in his back after the accident. 
A myelogram X-ray of Burke’s lower back revealed that he had a herniated disc. 
Mims testified that within a reasonable degree of medical certainty, the
accident at LMC caused Burke to have to undergo the two surgeries.  See Crye,
907 S.W.2d at 500.  

The evidence presented
demonstrates that Burke’s causation opinion is sufficiently reliable to support
the jury’s negligence finding.  See Gammill,
972 S.W.2d at 727; E.I.
du Pont de Nemours & Co. v. Robinson,
923 S.W.2d 549, 557 (Tex. 1995).  The fact that Mims did not base
his causation opinion on MRIs taken immediately before and after the accident
does not make the opinion unreliable or unscientific.  While the source of
Mims’s causation opinion was based in part on the history the patient
presented, the opinion constitutes competent evidence when coupled with
confirming medical evidence such as the results of medical tests and
examination.  

LMC asserts that Burke’s statements are
incredible because he first went to a doctor for his back pain three months
after the accident at LMC, but consistently reported to his doctors that he had
been experiencing back pain for about nine months.  Burke testified at trial
that he is not very good at remembering exact dates, and had no reason to think
that his doctors needed the precise date his injury occurred.  In any event,
Burke’s inability to recall the exact date on which he was injured does not
make his eventual statement to Mims regarding the source of his injury
inherently unreliable.  See Keo, 76 S.W.3d at 734–35
(holding that expert’s causation opinion, based on statements made by plaintiff,
was not inherently unreliable).  It was up to the jury to
determine whether Burke’s explanation was credible.  We hold that the
credibility of the patient history Burke gave to Mims was a fact issue that goes to the weight, rather than the admissibility, of
Mims’s causation opinion.  See id.; Onwuteaka,
908 S.W.2d at 283.  Burke’s statements to Mims were not so
inherently unreliable that they cannot support a medical opinion.
 See Havner, 953 S.W.2d at 714 (“If
the foundational data underlying opinion testimony are unreliable, an expert
will not be permitted to base an opinion on that data because any opinion drawn
from that data is likewise unreliable.”).  We therefore hold that
Mims’s causation testimony was legally sufficient, and sufficiently reliable to
support the jury’s negligence finding.  See City
of Keller, 168 S.W.3d at 827; Gammill, 972
S.W.2d at 727; Robinson, 923 S.W.2d at 557.  

Collateral Source Rule

          In its third issue, LMC
contends the trial court abused its discretion in excluding evidence that Burke
received partial compensation for his injuries from collateral sources; namely,
his wife’s health insurance policy.  LMC contends that Burke opened the door to
this evidence when he testified about financial hardships caused by his injury. 


          We review a
trial court’s decision to admit or exclude
evidence for an abuse of discretion.  Owens-Corning Fiberglas Corp. v. Malone,
972 S.W.2d 35, 43 (Tex. 1998).  A trial
court abuses its discretion when it acts without reference to any guiding rules
or principles.  Id.  

“The collateral source
rule is both a rule of evidence and
damages.”  Johnson v. Dallas County, 195 S.W.3d 853, 855 (Tex. App.—Dallas 2006, no
pet.); Taylor v. Am. Fabritech, Inc.,
132 S.W.3d 613, 626 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).  Generally,
the collateral source rule precludes a tortfeasor from obtaining the benefit
of, or even mentioning, payments to the injured party from sources other than
the tortfeasor.  Johnson, 195 S.W.3d at 855; Taylor,
132 S.W.3d at 626.  “In other words, the defendant is not entitled to present
evidence of, or obtain an offset for, funds received by the plaintiff from a
collateral source.”  Johnson, 195 S.W.3d at 855; Taylor,
132 S.W.3d at 626.  A claim of financial hardship, however, may open the door
to collateral source evidence to impeach the credibility of the witness.  See
Nat’l Freight, Inc. v. Snyder, 191 S.W.3d 416, 423 (Tex. App.—Eastland 2006, no pet.); Taylor,
132 S.W.3d at 628; Macias v. Ramos, 917 S.W.2d 371, 374 (Tex. App.—San
Antonio 1996, no writ).  Before the trial court allows impeachment evidence, the witness must offer direct testimony inconsistent with the
receipt of benefits.  See Snyder, 191 S.W.3d at 423; Mundy v. Shippers, Inc.,
783 S.W.2d 743, 745 (Tex. App.—Houston [14th Dist.] 1990, writ denied);
J.R.
Beadel & Co. v. De La Garza,
690 S.W.2d 71, 74 (Tex. App.—Dallas 1985, writ ref’d n.r.e.).

In this case, Burke testified to the
financial hardship caused by his injury, but his testimony was limited to the
hardship caused by his reduced earning capacity.  The following exchange
occurred at trial:

[Plaintiff’s Counsel:] Now, Ronnie, after all of this,
how much do you make now working with Bennett?

 

[Burke:] About twenty, about 20,000 and glad to have
it.

 

[Plaintiff’s Counsel:] Ronnie, you haven’t filed your
taxes, have you?

 

[Burke:] No, we haven’t.

 

[Plaintiff’s Counsel:] We don’t have your taxes for
last year yet.  But my point is, Ronnie, I wanted to ask you, since you were
the breadwinner for your family, how has this affected it?

 

[Burke:] It’s affected everything.  We had to—we had
to pull my daughter out of college.  She was in the sorority and drill team and
all of this stuff.  We had to pull her out of college.  We almost lost our
home.  We have been paying it for 20 years, we almost lost it.  I had to borrow
money from my sister, from my mother.  Nancy borrowed some money from her
mother.  We got behind on all of our bills.  All of it.  It just—it changed
everything. 

 

Burke’s testimony is not
inconsistent with the receipt of insurance benefits because the testimony was
limited to the financial hardship suffered as a result of his reduced earning
capacity, not his medical expenses.  See Snyder, 191 S.W.3d at 423
(holding that plaintiff’s wife’s testimony that she did not have money to pay
for her husband’s surgeries did not open door to collateral source testimony
because large portion of plaintiff’s future medical expenses would not be
covered by insurance); Macias,
917 S.W.2d at 374 (holding that testimony that plaintiff did not receive
paychecks was not inconsistent with receipt of insurance benefits and did not
open the door to collateral source evidence); Mundy, 783 S.W.2d at 745
(holding that trial court did not abuse its discretion in allowing collateral
source testimony when plaintiff testified generally about financial hardship
caused by injury).  The trial court therefore did not abuse its discretion in
excluding the evidence that Burke received compensation for his injury from
collateral sources. 

Supersedeas Bond

          After the jury verdict in
favor of Burke, the trial court entered a judgment against LMC in the amount of
$155,000 plus interest.  The trial court denied LMC’s motion to waive or
decrease the security required to suspend
enforcement of the judgment on appeal.  LMC then moved in this
court to waive or decrease the security. 
Initially, we denied the motion because LMC failed to provide a sufficient record
upon which to review the trial court’s decision.  See LMC Complete Auto., Inc. v. Burke, No. 01-06-00694-CV, 2006 WL 2506732, at *1
(Tex. App.—Houston [1st Dist.] Aug. 31, 2006, order).  Burke served LMC with a writ of
execution on October 11, 2006.  The next day, LMC filed a motion in this court
to stay the execution of the writ, and another motion to waive or decrease the security.  We granted the stay and remanded the
motion to the trial court for the taking of evidence and the entry of findings
of fact.  See Tex. R. App. P.
24.4(d).  After a hearing, the trial court entered its findings of fact.  LMC
has now moved again in this court to waive or decrease the security required to suspend enforcement of the judgment, and
contends the evidence is insufficient to support the trial court’s findings of
fact.  

          On remand, the trial court
heard evidence from several witnesses.  John Compton, an underwriter for surety
bonds, testified that his bonding agency examined LMC’s financial statements
and refused to issue a supersedeas bond because LMC has a negative net worth. 
LMC’s balance sheet for September 2006—submitted to Compton’s bonding agency
and admitted at the security hearing—shows that LMC has a negative net worth of
$5,321.96.  Compton testified that he would issue a bond for a company like LMC
only if it could supply cash collateral for 100 percent of the bond.  Compton did not believe that any other bonding agency would issue a supersedeas bond for LMC. 
Higdon Compton, the President of the bonding agency, executed an affidavit in
which he also stated that he denied LMC’s application for a supersedeas bond
because LMC’s financial condition could not justify the issuance of a bond,
based on LMC’s profit and loss statement and balance sheet.  

          Burke submitted LMC’s tax
returns for 2003 and 2004.  In 2003, LMC had total sales of $2,683,637 and a
taxable income of negative $69,857.  In 2004, LMC had total sales of $2,815,865
and a taxable income of negative $8,680. 

          Candice Lutz, LMC’s office
manager, testified that at the time of the hearing, LMC had about $4,800 in the
bank.  Lutz testified that LMC often has to wait to pay bills because of a lack
of cash on hand, and requiring LMC to produce $190,000 for a supersedeas bond
would create a substantial economic hardship for the company.  Lutz testified
that writing even a $5,000 check would create a substantial economic hardship
for LMC.  LMC barely has enough money to write its payroll checks each week and
Lutz and the other managers will often refrain from cashing their checks
immediately to make sure the employees are paid.  LMC, however, has never been
unable to meet its payroll obligations and has never had to borrow money to pay
bills or the payroll.

          David Christian, the
President of LMC and owner of seventy percent of its stock, testified that
requiring LMC to produce $190,000 for a supersedeas bond would put the company
out of business, and that even having to write a check for $5,000 would cause a
substantial economic hardship.  Christian testified that LMC submitted a profit
and loss statement and a balance sheet to Compton’s bonding agency in an
attempt to secure a supersedeas bond, but the agency denied the application. 
Christian also tried to obtain a letter of credit from a bank but this
application was denied as well.  LMC is marginally profitable like most body
shops, and Christian has never received a bonus from LMC.  LMC has considered
bankruptcy because Christian does not believe the company will be able to pay
the judgment.  Christian owns the land on which LMC is located and LMC pays
Christian $5,500 a month in rent.  Christian also owns a business called LMC
Marine that recently constructed a new building.  LMC Marine obtained a loan
from GE Credit to construct the building.

A. Standard of Review

[A] judgment debtor may supersede the judgment by: (1) filing with
the trial court clerk a written agreement with the judgment creditor for
suspending enforcement of the judgment; (2) filing with the trial court clerk a
good and sufficient bond; (3) making a deposit with the trial court clerk in
lieu of a bond; or (4) providing alternate security ordered by the court.

  

Tex. R. App. P. 24.1(a).  When
a judgment is for money, the amount of the bond, deposit, or security must
equal the sum of: (1) the amount of compensatory damages awarded in the
judgment; (2) interest for the estimated duration of the appeal; and (3) costs
awarded in the judgment.  See Tex.
Civ. Prac. & Rem. Code Ann. § 52.006(a) (Vernon Supp. 2006); Tex. R. App. P. 24.2(a)(1).  The amount
of the security may not, however, exceed the lesser of (1) fifty percent of the
judgment debtor’s net worth, or (2) twenty-five million dollars.  See Tex. Civ. Prac. & Rem. Code Ann. §
52.006(b); Tex. R. App. P.
24.2(a)(1).  

A judgment debtor who provides security based on the debtor’s net
worth must simultaneously file an affidavit that states the debtor’s net worth
and states complete, detailed information concerning the debtor’s assets and
liabilities from which net worth can be ascertained.  Tex. R. App. P. 24.2(c)(1).  “The affidavit is prima facie
evidence of the debtor’s net worth.”  Id.  A judgment creditor may file
a contest to the debtor’s affidavit of net worth, and may conduct reasonable
discovery concerning the judgment debtor’s net worth.  Tex. R. App. P. 24.2(c)(2).  “When a judgment creditor files
a contest to the judgment debtor’s affidavit of net worth, the trial court must
hold a hearing and ‘issue an order that states the debtor’s net worth and
states with particularity the factual basis for that determination.’”  In re
Smith, 192 S.W.3d 564, 568 (Tex. 2006) (orig. proceeding) (quoting Tex. R. App. P. 24.2(c)(3)).  “Net
worth is calculated as the difference between total assets and total
liabilities as determined by generally accepted accounting principles.”  G.M. Houser, Inc.
v. Rodgers, 204 S.W.3d 836, 840 (Tex.
App.—Dallas 2006, no pet.); accord Ramco Oil &
Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.,
171 S.W.3d 905, 915 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

On the motion of a party, an appellate court may
review the sufficiency or excessiveness of the amount of security.  See Tex. Civ. Prac. & Rem. Code Ann. §
52.006(d); Tex. R. App. P.
24.4(a).  “Review may be based both on conditions as they existed at the time
the trial court signed an order, and on changes in those conditions
afterward.”  Tex. R. App. P.
24.4(b).  We review the trial court’s determination of the amount of security
under an abuse of discretion standard.  See Isern v. Ninth Court of Appeals,
925 S.W.2d 604, 606 (Tex. 1996) (orig. proceeding); Rodgers, 204 S.W.3d at 840;
Ramco Oil & Gas, Ltd., 171 S.W.3d at 909.  The trial court abuses
its discretion if the evidence is legally or factually insufficient to support
its findings.  See Smith, 192 S.W.3d at 570; Bocquet v. Herring,
972 S.W.2d 19, 21 (Tex. 1998); Rodgers,
204
S.W.3d at 840; Ramco Oil & Gas,
Ltd., 171 S.W.3d at 910.  If
we conclude the trial court abused its discretion, we may order the amount of
the security decreased or increased in an amount not to exceed the lesser of
fifty percent of the judgment debtor’s net worth, or twenty-five million
dollars.  See Tex. Civ. Prac.
& Rem. Code Ann. § 52.006(d); Tex.
R. App. P. 24.4(a);
Rodgers, 204 S.W.3d at 840.

The judgment debtor has the burden
of proving net worth.  See Tex.
Civ. Prac. & Rem. Code Ann. § 52.006(c); Tex. R. App. P. 24.2(c)(3).  Therefore, to show the trial
court abused its discretion based on the legally insufficient evidence, the
judgment debtor must show the evidence conclusively establishes, as a matter of
law, all vital facts in support of its position.  See Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 241 (Tex. 2001); Rodgers, 204 S.W.3d
at 840–41; Ramco Oil & Gas, Ltd., 171 S.W.3d at 910. 
Testimony from interested witnesses
may establish a fact as a matter of law only if the testimony could be readily
contradicted if untrue, and is clear, direct, and positive, and there are no
circumstances tending to discredit or impeach it.  Lofton v. Tex. Brine
Corp., 777 S.W.2d 384, 386 (Tex. 1989); see also City of Keller, 168
S.W.3d at 820 (stating that fact-finder cannot ignore undisputed testimony that
is clear, positive, direct, otherwise credible, free from contradictions and
inconsistencies, and could have been readily controverted).  

B. Trial Court’s Findings of Fact

The trial court stated its findings
of fact as follows:

1. [LMC] is a financially viable, on-going business
with numerous employees, generating annual revenue of over $2.5 million dollars. 


 

2. [LMC] has not proved by a preponderance of the
evidence that it is insolvent.

 

3. [LMC] has not proved insufficient net worth to post
a bond, or obtain a bond in due course of business, or able to provide
sufficient assets as security to obtain a supersedeas bond.

 

4. Net worth is found to be in excess of $290,000,
with further value undetermined for the reasons set out in these findings.

 

a. [LMC] has not provided sufficient evidence for the
Court to accurately state net worth.

 

b. The financial affairs of [LMC] are solely
controlled by the stockowner and decision maker for [LMC].

 

c. Testimony and the unaudited financial information
presented demonstrate non-arms-length transactions between [LMC], the
stockowner, and other related entities.

 

d. The cash flow of [LMC] is under the control of the
stockowner and decision maker.

 

e. Consolidated financials for the interrelated
companies are not available to the Court to evaluate the financial impact of
the inter-company and stockowner dealings to prepare financials and calculate
net worth.

 

f. Due to the lack of credible value of the
inter-company and stockowner transactions, the Court is unable to determine the
reasonable value of the liabilities of [LMC], which, if adjusted, would increase
the net worth of [LMC].

 

g. The affidavit filed fails to state complete,
detailed information concerning [LMC’s] assets and liability from which net
worth can be ascertained.

 

5. [LMC] has not proved that it is financially unable
to post a bond or obtain a bond in due course of business or to provide
sufficient assets as security to obtain a supersedeas bond. 

 

6. [LMC] is financially able to post a bond, or obtain
a bond in due course of business, or able to provide sufficient assets as
security to obtain a supersedeas bond.

 

7. In addition, the Court adopts the findings of fact
attached as Exhibit A.

 

Exhibit A provides:

 

 1. [LMC] is a business that in tax year 2003 had
$2,691,272.00 in gross receipts or sales.  [LMC] is a business that in tax year
2004 had $2,815,865.00 in gross receipts or sales.  Having been presented with
no contrary evidence, this Court finds that [LMC] is a fiscally solvent
company;

 

2. In addition, [LMC’s] balance sheet from September
of 2006 shows total assets worth $144,482.88;

 

3. [LMC’s] balance sheets from 2006 show a
depreciation of $155,068.00 three weeks after the jury’s verdict.  The jury’s
verdict in the trial of this matter was $155,000.00.  This depreciation is not
present on any financial documents prior to the verdict in this matter.  The
sudden appearance of the depreciation has never been explained by testimony or
by any of the documents presented to this Court.  The Court finds that this is
a write off from the assets and is not a physical loss or expenditure.  The
Court further finds that this is available money for the payment of a bond.

 

4. According to its own balance sheets, [LMC] has
business accounts and lines of credit with Capital One, Amegy Bank, HCB, MBNA
Commercial, Klein Bank, Houston Community Bank, Paradigm Bank and Prosperity
Bank.  There was no testimony or evidence presented that any of these lending
institutions were contacted or consulted for the purpose of obtaining financing
for payment of a supersedeas bond.  The Court finds that these institutions add
to the available assets and net worth of [LMC].

 

5. Mr. Christian testified that he owns the property
and the building on which [LMC] is located and that he receives monthly rentals
for the land and building from [LMC]—a company that he owns 70% of.  Mr.
Christian is also the sole owner of another business, LMC Marine, which since
the verdict in this matter has begun construction of a brand new facility on
Interstate 45 north.  Mr. Christian testified that the business [of LMC] was
part of the basis of the construction/property loan for the new LMC Marine
facility.  Based on this, the Court finds that [LMC] has value as a company.

 

6. Mr. Christian failed to present any evidence or
testimony that he, as both the owner and landlord of [LMC] has ever been unable
to acquire funding for [LMC].

 

7. Ms. Lutz, the office manager for [LMC] testified
that there are currently nineteen (19) employees at [LMC] and that they are
paid each week.  Ms. Lutz testified that [LMC] was able to meet their weekly
payroll obligations which she estimated to be approximately $15,000.00 per week
and that no employees had been laid off.  Based on this testimony, the Court
finds that there is no factual basis supporting any claim of financial
hardship;

 

8. Mr. Compton, the son of Mr. Higdon Compton, a
bondsman, testified that his company would not extend a bond to [LMC] but
testified that the decision was based on the financial documents that [LMC]
itself provided.  Mr. Compton also testified that his company has done a large
amount of business in the past with [the] law firm representing [LMC].  Mr.
Compton did not receive or review any documentation that would support the
financial data that [LMC] provided.  Mr. Compton signed an affidavit on October
11, 2006 setting forth his conclusion that neither his company, nor any other
company, would issue the requisite bond.  However, the facsimile transfer
indication on the bottom of Mr. Compton’s affidavit indicates that he had
signed and transferred the affidavit back to counsel for [LMC] at approximately
4:11 p.m. on October 11, 2006.  According to the writ of execution served on
October 11, 2006, the Harris County Constable’s Office served the writ at 11:48
p.m. (actually “a.m.”).  This means that the finanacial documentation was
printed off, sent to Mr. Compton’s firm, reviewed, compared the reaction of
every other company in the Harris County & Montgomery County areas, and
rejected the bond.  Then, an affidavit was written, sent to Mr. Compton, signed
by Mr. Compton, and faxed back to counsel for [LMC’s] office within a maximum
time period of four hours and twenty-three minutes.  The Court finds that this
is not a sufficient time to conduct a proper valuation of the business for the
purposes of establishing net worth; although it was sufficient for Mr. Compton
to determine the documentation did not support a bond.

 

9. Further, Mr. Compton testified that his company did
not examine the available assets of [LMC] in reaching their conclusion not to
extend a bond.    

 

C.  Net Worth

          LMC contends the evidence
is legally and factually insufficient to support the trial court’s finding that
LMC has a net worth in excess of $290,000.  The only evidence of LMC’s net
worth admitted at the security hearing was Christian’s testimony, and LMC’s
balance sheet from September 2006 that shows that LMC has a net worth of
negative $5,321.96.  LMC had previously admitted balance sheets from 2002,
2003, 2004, and April of 2006 that show a net worth of negative $6,291.11,
negative $2,399.68, positive $45,482.73, and negative $7,206.84, respectively. 


LMC’s balance sheet from September
2006 constitutes evidence that is clear, positive,
direct, otherwise credible, free from contradictions and inconsistencies, and
could have been readily controverted.  See Lofton, 777 S.W.2d at 386; see
also City of Keller, 168 S.W.3d at 820; Rodgers, 204 S.W.3d at 845–46; Ramco
Oil & Gas, Ltd.,
171 S.W.3d at 911–12.  Although Burke contends that the
balance sheet is not credible, he produced no evidence to discredit the balance
sheet or controvert the amounts it contains (with the exception of a depreciation
allowance discussed below).  While LMC’s tax returns demonstrate that it had
sales revenues in excess of $2,000,000 in 2003 and 2004, LMC sustained a net
loss in each of these years.  The tax returns do not state LMC’s net worth.  We hold that the September 2006 balance sheet was sufficient to
prove LMC’s net worth as required by Texas Rule of Appellate Procedure 24.  See
Tex. R. App. P. 24.2(c)(1).

The trial court, however, expressly
found that the “depreciation” entry of $155,068.00 on LMC’s balance sheet was
not a physical loss or expenditure, and constituted an amount that LMC could
use to obtain a supersedeas bond.  The depreciation entry first appeared on the
April 2006 balance sheet, which LMC presented to the trial court three weeks after
the verdict in this case.  The depreciation entry lowers the value of LMC’s
assets from $299,540.88 to $144,482.88.  LMC’s total liabilities, uncontested
at the hearing, are $149,804.84.  With the depreciation entry, LMC’s net worth
is negative $5,321.96; without the depreciation entry, LMC’s net worth is
$149,736.04.  

We hold that the evidence supports the trial
court’s finding that the depreciation allowance on LMC’s balance sheet was not
an entry made in the ordinary course of business so as to reduce LMC’s net
worth, but rather was inserted in an effort to reduce LMC’s asset valuation
after the verdict, and thus does not reduce the available assets that LMC could
use to obtain a supersedeas bond.  LMC never explained the appearance of the
depreciation entry, and LMC included the entry for the first time on its April
2006 balance sheet, which LMC presented to the trial court three weeks after
the verdict in this case.  

Although the trial court also found that LMC
engaged in transactions with its majority shareholder, there is no evidence
that these transactions were outside the ordinary course of business or that
any took place after the verdict in order to deplete LMC’s net worth.  We
therefore conclude that the evidence is insufficient to support the trial court’s
determination that LMC has a net worth in excess of $290,000.  Additionally,
the trial court failed to state a specific net worth
figure or state with particularity how it reached a figure in excess of
$290,000.  See Smith, 192 S.W.3d at 570 (“The trial court abused its discretion here because it
failed to state with particularity the factual basis for its determination that
Smith’s net worth was $1,142,951.”); Rodgers, 204
S.W.3d at 846.  

After reviewing the
record as a whole, we conclude that the evidence presented establishes LMC’s
net worth sufficiently for us to reset the bond, as we are required to do in
Texas Rule of Appellate Procedure 24.  Tex.
R. App. P. 24.4(d); see also Rodgers,
204
S.W.3d at 846.  Because the evidence is sufficient to support the
trial court’s determination that the depreciation
allowance actually constitutes available assets that LMC could use to obtain a
supersedeas bond, we eliminate this entry from consideration.  According to the
balance sheet, LMC has assets worth $299,540.88, and liabilities totaling
$149,804.84.  Subtracting liabilities from assets, LMC’s net worth is
$149,736.04.  See Tex. Civ. Prac. & Rem.
Code Ann. § 52.006(c); Tex. R.
App. P. 24.2(c)(3); Rodgers, 204
S.W.3d at 846; Ramco Oil & Gas,
Ltd., 171 S.W.3d at 911–12. 
Applying Texas Rule of Appellate Procedure 24.2(a)(1)(A), security for
supersedeas for LMC should be set at $74,868.02, fifty percent of LMC’s net
worth.  See Tex. R. App. P.
24.2(a)(1)(A), 24.4(d).   

D.  Substantial Economic
Harm

LMC contends the evidence
is legally and factually insufficient to support the trial court’s finding that
the security required to suspend enforcement of the judgment was not
likely to cause LMC substantial economic harm. 

A trial court must lower the amount of security
required to suspend enforcement of a judgment to an amount that will not cause
the judgment debtor substantial economic harm if, after notice to all parties
and a hearing, the court finds that the security required is likely to cause
the judgment debtor substantial harm.  See Tex. Civ. Prac. & Rem. Code Ann. § 52.006(c); Tex. R. App. P. 24.2(b).  The rule and
the statute do not define the term “substantial economic harm,” but it is clear
that it is something less than “irreparable harm,” the legal standard utilized
under the previous version of the statute.  Ramco Oil & Gas,
Ltd., 171 S.W.3d at 916. 
“The thrust of the inquiry under section 52.006(c) [and Rule 24.2(b)] is
whether the judgment debtor has the ability to meet the supersedeas
requirement[,] . . . and whether doing so is likely to result in substantial
economic harm.”  Id. at 917.  In Ramco Oil & Gas, Ltd. v. Anglo
Dutch (Tenge) L.L.C., the Fourteenth Court of Appeals stated:

In conducting [an economic harm] analysis,
the trial court has the flexibility to take into account a number of factors
that could affect the judgment debtor’s ability to post bond or other security
based on the facts and circumstances specific to the case.  This inquiry,
however, should not focus on the market capitalization of the company or its
value as a whole but on the judgment debtor’s actual ability to post the
security required.  In other words, the court should be less concerned with
what price the company might fetch in the marketplace if sold today and more
concerned with the company’s available resources and its ability to use them to
post security.  

 

Id.  

The trial court found
that posting a supersedeas bond for the full amount of the judgment would not be
likely to cause substantial economic harm to LMC.  We therefore presume that
the trial court also found that posting a bond in the amount of $74,868.02,
fifty percent of LMC’s actual net worth, would not be likely to cause substantial
economic harm to LMC.  See Tex.
R. App. P. 24.2(a)(1)(A); Ramco Oil & Gas,
Ltd., 171 S.W.3d at 917 (“The
trial court found that posting a supersedeas bond in the amount of $7.505
million will not cause substantial economic harm to Ramco Energy.  We presume
that the trial court also found that posting a bond, deposit, or security in
the amount of $5.27 million will not likely cause substantial economic harm to
Ramco Energy.”).    

          Both Christian
and Lutz testified at the security hearing that requiring LMC to post even a
$5,000 supersedeas bond would cause the company substantial economic harm.  The
only testimony LMC produced concerning its ability to obtain a supersedeas bond
came from Higdon and Compton, who admittedly had only reviewed LMC’s balance
sheet and profit and loss statement in making their decision not to extend a
supersedeas bond to LMC.  As the trial court found, LMC only applied for a supersedeas bond at one
bonding agency, and the agency made its decision to deny LMC’s application for
a bond in about four hours.  LMC’s balance sheet demonstrates that its assets
include $50,673.82 in cash and accounts receivable, which according to Compton is an important factor in determining whether his bonding agency will issue a
supersedeas bond.  While both Christian and Lutz testified that LMC has
difficulty paying its bills, the record contains no evidence that LMC would be
unable to meet its future financial obligations.  While
this testimony was uncontroverted, we hold that the trial court was free to
reject these opinions in light of other evidence, including LMC’s past revenues
and its ability to otherwise secure funding for its operations.  LMC has not
shown substantial economic harm so as to conclude that the trial court abused
its discretion.  See Lofton,
777 S.W.2d at 386 (stating that testimony from interested witnesses may
establish fact as matter of law only if testimony could be readily contradicted
if untrue, and is clear, direct, and positive, and there are no circumstances
tending to discredit or impeach it); see also City of Keller, 168 S.W.3d
at 820.  

In light of these considerations, we conclude
that the testimony of interested witnesses Christian and Lutz does not satisfy
the Lofton standard and fails to prove as a matter of law that LMC will
likely suffer substantial economic harm if required to post a supersedeas bond
in the amount of $74,868.02.  See 777 S.W.2d at 386; see also
Tex. Civ. Prac. & Rem. Code Ann.
§ 52.006(c); Tex. R. App. P.
24.2(b).  Under the applicable standard of review, the record contains legally
and factually sufficient evidence to support the trial court’s finding that LMC
is not likely to suffer substantial economic harm if required to post
$74,868.02 in security.  See Ramco
Oil & Gas, Ltd.,
171 S.W.3d at 920.  The trial court therefore did not abuse its
discretion in impliedly making this determination.

E. Conclusion

The record does not
support the trial court’s finding that LMC has a net worth in excess of
$290,000.  The evidence, however, establishes that LMC has a net worth of $149,736.04.  In addition, the trial
court did not abuse its discretion in impliedly concluding that LMC is not
likely to suffer substantial economic harm if
required to post $74,868.02 in security.  We vacate the trial court’s July 25, 2006 order denying
LMC’s motion to decrease the security
required to suspend enforcement of the judgment.  Pursuant to Texas Rule of Appellate Procedure 24, we order
that the security for supersedeas for LMC be set at $74,868.02, fifty percent
of LMC’s net worth.  See Tex. R.
App. P. 24.2(a)(1)(A), 24.4(d).  Our order entered on February 15, 2007,
staying the enforcement of the judgment in this case, will remain in effect for
fifteen days after the date this opinion issues to allow the parties to seek
further review of our security determination.

LMC’s Separate Appeal of
the Trial Court’s Findings of Fact

LMC filed a separate appeal challenging
the trial court’s findings of fact on the security issue (cause number 01-07-00126-CV). 
The general rule is that an appeal may be
taken only from a final judgment.  Lehmann v. Har-Con Corp., 39
S.W.3d 191, 195 (Tex. 2000).  This rule has exceptions, but none
is applicable here.  See Tex.
Civ. Prac. & Rem. Code Ann. § 15.003 (Vernon Supp. 2006), § 51.012
(Vernon 2003), § 51.014 (Vernon Supp. 2006).  LMC cannot appeal the trial
court’s findings of fact because the findings do not constitute a final
judgment.  See Lehmann, 39 S.W.3d at 195 (“A judgment is final for purposes of appeal if it disposes
of all pending parties and claims in the record, except as necessary to carry
out the decree.”).  Rather, LMC’s remedy is to challenge the bond
by seeking relief from the court of appeals in the cause in which the appeal is
pending pursuant to Texas Rule of Appellate Procedure 24.  Tex. R. App. P. 24.4(a).  We
therefore dismiss appellate cause number 01-07-00126-CV for want of
jurisdiction.  See New York
Underwriters Ins. Co. v. Sanchez, 799
S.W.2d 677, 679 (Tex. 1990) (holding that appellate court’s assumption of
jurisdiction over interlocutory order when not expressly authorized to do so by
statute is fundamental jurisdictional error).

Conclusion

We hold that the evidence is legally sufficient
and sufficiently reliable to support the jury’s negligence finding, and the
trial court did not abuse its discretion in excluding the evidence that Burke
received compensation for his injury from collateral sources.  We therefore
affirm the trial court’s judgment.  We further hold that the record demonstrates
that LMC has a net worth of $149,736.04.  We therefore vacate the trial
court’s July 25, 2006 order denying LMC’s motion to decrease the security required to suspend enforcement of the judgment,
and order that the security for supersedeas for LMC
be set at $74,868.02, fifty percent of LMC’s net worth.  Our order entered on
February 15, 2007, staying the enforcement of the judgment in this case, will
remain in effect for fifteen days after the date this opinion is issued to
allow the parties to seek further review of our security determination.  We
dismiss appellate cause number 01-07-00126-CV for want of jurisdiction. 

 

                                                                   Jane Bland

                                                                   Justice

 

Panel consists of Justices Nuchia,
Hanks, and Bland.