Joseph ONWUTEAKA, Appellant,

v.

Jean GILL, Appellee.

No. 01–94–00947–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 7, 1995.

Joseph Onwuteaka, Houston, pro se.

David A. Furlow, James C. Moore, Houston, for appellee.

Before HUTSON–DUNN, MIRABAL and HEDGES, JJ.

## OPINION

HUTSON–DUNN, Justice.

The appellant, Joseph Onwuteaka, appeals a post-answer default judgment rendered against him in favor of the appellee, Jean Gill, and the trial court's decision to strike Onwuteaka's plea in intervention that he filed in a suit between Mrs. Gill and Wayne Brown. We reverse and remand.

## I. Summary of Facts

At the trial and the hearing on Onwuteaka's post-trial motions to reinstate and motions for new trial, the trial court considered the following evidence about the events in

controversy. Mrs. Gill was injured in an automobile accident on February 13, 1991, and she retained Onwuteaka to file suit on her behalf. Onwuteaka filed suit on July 27, 1992, against Wayne Brown, the driver of the other car. However, Mrs. Gill became dissatisfied with Onwuteaka's representation and fired him in September of 1992. Mrs. Gill hired Leona Jaquette to represent her, and Jaquette referred the case to James Moore. Based upon his original contract with Mrs. Gill, Onwuteaka intervened in the case *pro se* and sought a contingency fee to be paid from the damages award, if any, that she received in the case. Mrs. Gill filed a counterclaim against Onwuteaka and asserted negligence and breach of contract arising from the handling of her case.[1]

Cynthia DeJean, the court clerk, talked with Onwuteaka the week before trial and notified him that the case was on "standby" for trial at 1:00 p.m. on February 21, 1994. Onwuteaka appeared in court at 1:00 p.m. as scheduled, and the record shows that he filed pretrial motions at 1:08 p.m. Both the court and DeJean again told Onwuteaka that the case was on "standby", and the court informed him that his case was the only case set on the docket for that day. DeJean told Onwuteaka that she would call him as soon as the case had been assigned, and he seemed to understand her instructions.

The court later told DeJean to have the parties in court at 3:00 p.m., and DeJean notified Onwuteaka's office at 1:50 p.m. that Onwuteaka needed to be in court at 3:00 p.m. for trial without his client. Onwuteaka was not in his office when DeJean called. He testified that he stayed in the courthouse until 2:30 p.m. to finish other business that he had at the clerk's office. When DeJean called Onwuteaka's office, Theresa Garcia, his receptionist, said that she would inform Onwuteaka that his case had been called for trial. Garcia testified that she was unable to reach Onwuteaka, so she left a message on his car phone. Onwuteaka denied receiving the message.

Onwuteaka was not present when the court called the case for trial at 3:00 p.m. The

---

1. Mrs. Gill asserted additional causes of action that were abandoned before trial.

court delayed hearing the case while DeJean again attempted to contact Onwuteaka. De-Jean called Garcia and told her that the case was in trial and that Onwuteaka had not yet arrived. Garcia told DeJean that she would try again to contact Onwuteaka and let him know that he was needed in trial. Garcia called DeJean back and said that she had finally caught up with Onwuteaka. Garcia testified that she did not speak with Onwuteaka until he arrived back at his office around 3:40 p.m. Upon learning that the trial had started at 3:00 p.m., Onwuteaka immediately left for the courthouse. Onwuteaka testified that he told Garcia to call and notify DeJean that he was on his way and would be there around 4:30 p.m. Garcia testified that she did so, but DeJean testified that Garcia did not say when Onwuteaka would arrive in court. The court asked De-Jean whether Garcia "gave any indication that Onwuteaka would arrive soon, or was in any rush to arrive here." DeJean answered, "No rush." The court then stated, "That being the case, counsel, I'm ready to proceed. We've waited for an hour for Mr. Onwuteaka. Please proceed."

Brown's attorney announced that he and Moore had settled on behalf of their clients, and Brown was willing to pay $15,000 into the court's registry for disposition after the court had resolved the intervention in its final judgment. The court approved the settlement and rendered judgment accordingly.

Moore next requested that the court render a take-nothing judgment on Onwuteaka's contract claim in intervention since he did not appear for trial. The court granted the motion and struck Onwuteaka's pleadings. After Moore waived Mrs. Gill's right to a jury trial, the court heard evidence on Mrs. Gill's request for a default judgment on her counterclaim against Onwuteaka for legal malpractice and breach of contract. Moore called Brown's attorney, David Leuders, and Mrs. Gill to prove the elements of Mrs. Gill's legal malpractice and breach of contract case against Onwuteaka. Further, Moore testified himself about reasonable attorney's fees in the case.

Moore was Gill's final witness, and Onwuteaka entered the courtroom as Moore fin-ished testifying. Onwuteaka told the court that DeJean told him at 1 p.m. that the case was still on standby, and he got the impression that the trial would be the next morning. DeJean testified that she told Onwuteaka, "if [the trial] didn't go today, it will be tomorrow for sure."

Onwuteaka refused to cross-examine the witnesses that had already testified because the court would not grant a continuance so he could examine the record of their testimony. He stated he could not proceed with the case unless he knew the substance of their testimony. Therefore, the court rendered judgment on the case. The court ordered that Mrs. Gill take nothing in her claim against Brown because the parties had already settled for $15,000. Additionally, the court rendered judgment that Mrs. Gill recover $35,000 from Onwuteaka, plus $17,500 in attorney's fees.

After denying Onwuteaka's motions to reinstate his case and to set aside the default judgment on Mrs. Gill's case, the court entered findings of fact and conclusions of law, which included the following:

1. Onwuteaka breached his contract with Mrs. Gill;

2. Onwuteaka was negligent in his representation of Mrs. Gill;

3. Onwuteaka's negligence was a proximate cause of Mrs. Gill's injuries;

4. Mrs. Gill, Leuders, Moore, and DeJean were credible witnesses and gave credible testimony;

5. Onwuteaka was not a credible witness and did not give credible testimony.

## II. Analysis

### A. Striking the Plea in Intervention

Onwuteaka contends in his first, second, and fourth points of error that the trial court erred in striking his plea in intervention. The record indicates that Moore requested the court to render a take-nothing judgment on Onwuteaka's claim since he did not timely arrive for trial, and the court granted the motion and struck Onwuteaka's plea. It appears that the court intended to sanction Onwuteaka by striking his plea on the merits

rather than dismissing his claim for want of prosecution, and the parties agree in their briefs that this is what the court intended to do. *Compare TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (discussion of "death penalty" sanctions as an adjudication on the merits) *with Rizk v. Mayad*, 603 S.W.2d 773, 775 (Tex.1980) (litigant may refile an action that has been dismissed for want of prosecution, since the merits of the action remain undecided).

■ The decision to impose a sanction is left to the discretion of the trial court and will be set aside only upon a showing of a clear abuse of discretion. *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990). The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules or principles, or whether under the circumstances of the case the trial court's action was arbitrary or unreasonable. *Id.* When reviewing a trial court's decision under the abuse of discretion standard, we are required to view the evidence in the light most favorable to the trial court's action and to indulge every legal presumption in favor of the judgment. *Vaughn v. Texas Employment Comm'n*, 792 S.W.2d 139, 143 (Tex. App.—Houston [1st Dist.] 1990, no writ).

■ Onwuteaka contends that the court did not have authority pursuant to TEX. R.CIV.P. 215 to strike his pleadings because rule 215 applies only to pre-trial discovery matters. *See Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 171 (Tex.1993). We agree with this statement of the law. Further, none of the other rule-based reasons for imposing sanctions are applicable to this case. *See* TEX.R.CIV.P. 13 (improper pleadings, motions, and "other papers"); TEX. R.CIV.P. 21b (failure to serve or deliver copies of pleadings or motions); *Koslow's*, 796 S.W.2d at 703 (TEX.R.CIV.P. 166 implicitly provides court with power to provide in pretrial order that refusal to participate in status conference or to file timely joint status report may result in death penalty sanctions). However, the record does not show that any of these rules were the basis for the court's decision to strike Onwuteaka's plea in intervention. In ordering Onwuteaka's plea struck, the court did not articulate the au-

thority upon which it acted. A trial court has inherent power to sanction bad faith conduct during the course of litigation that interferes with administration of justice or the preservation of the court's dignity and integrity. *Metzger v. Sebek*, 892 S.W.2d 20, 51 (Tex.App.—Houston [1st Dist.] 1994, writ denied). However, there are limits to this inherent power to sanction. *Id.* at 51 n. 26. For example, the inherent power to sanction exists only to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as the significant interference with core judicial functions of Texas courts. *See Lawrence v. Kohl*, 853 S.W.2d 697, 699–700 (Tex.App.—Houston [1st Dist.] 1993, no writ) (citing *Kutch v. Del Mar College*, 831 S.W.2d 506, 510–11 (Tex. App.—Corpus Christi 1992, no writ)). Further, due process principles limit the imposition of "death penalty" sanctions to circumstances where a party's flagrant bad faith conduct justifies a presumption that his claims or defenses lack merit. *TransAmerican Natural Gas Corp.*, 811 S.W.2d at 917–18; *Lawrence*, 853 S.W.2d at 700. We now consider whether the trial court abused its discretion in exercising its inherent power to strike Onwuteaka's pleadings under the facts of this case.

■ The record reflects that Onwuteaka knew his case was set for "standby" at 1:00 p.m. on February 21, 1994. Onwuteaka timely arrived at the courthouse on that day, and the trial court informed him that his case was the only case set on the court's docket. Further, DeJean told Onwuteaka that she would call him as soon as the case had been assigned, and he seemed to understand her instructions. However, Onwuteaka did not subsequently contact the court to determine the status of his case. While the court would be justified in concluding that Onwuteaka's conduct constituted negligence, we must determine whether the court could have reasonably concluded that Onwuteaka acted in bad faith.

Garcia testified that she was unable to contact Onwuteaka in response to DeJean's phone call, and she did not hear from him again until he arrived back at the office around 3:40 p.m. When Garcia told Onwut-

eaka that the court coordinator had called and said that the court wanted all attorneys in court without their clients for trial, he left for the courthouse and told her to call the court and say that he was on his way. Both DeJean and Garcia testified that Garcia did call the courthouse, although their testimony conflicted as to whether Garcia said at what time Onwuteaka was expected to arrive. The record is clear that Onwuteaka arrived at the courthouse during trial shortly after 4:00 p.m. Based upon these facts, we conclude that the trial court could not have reasonably concluded that Onwuteaka acted in flagrant bad faith when he appeared late for trial. The record contains no evidence that Onwuteaka knew that his case had been taken off "standby" status before the trial began.

■ We further note that the record contains no evidence that the trial court considered some lesser sanction other than striking Onwuteaka's pleadings, such as a dismissal for want of prosecution. *See* TEX.R.CIV.P. 165a(1) ("A case may be dismissed for want of prosecution on failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice"); *see also Rizk*, 603 S.W.2d at 775 (dismissal for want of prosecution is not a decision on the merits). Before a trial court may impose the "death penalty" sanction, the record must reflect that the court considered the availability of a lesser sanction and whether such a sanction would fully promote compliance with the purpose for imposing the sanction. *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex.1993); *TransAmerican Natural Gas Corp.*, 811 S.W.2d at 917.

We conclude that the trial court abused its discretion in striking Onwuteaka's pleadings.

We sustain Onwuteaka's second point of error.

## B. Rendition of Default Judgment

■ In his first, third, and fifth points of error, Onwuteaka asserts numerous reasons that the trial court erred in denying his motions for new trial. He contends in his first point of error that the court should have set aside Mrs. Gill's default judgment against him because he did not receive timely notice of the trial setting. He argues in his third point of error that he is entitled to a new trial because he satisfied the requirements of *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). Finally, Onwuteaka contends in his fifth point of error that the trial court erred in rendering a default judgment for Mrs. Gill because she did not produce legally sufficient evidence to prove the elements of her malpractice claim. An appellate court may not reverse a trial court's denial of a motion for new trial following a default judgment until it first concludes that the trial court abused its discretion. *Vannerson v. Vannerson*, 857 S.W.2d 659, 663 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

■ We consider Onwuteaka's fifth point of error first because we consider it dispositive to this appeal. Onwuteaka asserted in his motions for new trial that Mrs. Gill produced no evidence regarding Onwuteaka's breach of any duty, causation of Mrs. Gill's injuries, or damages.

■ The record reflects that Onwuteaka filed an answer to Mrs. Gill's malpractice counterclaim. Before rendering a post-answer default judgment, the court must require the plaintiff to produce evidence on all of the elements of its cause of action as in a trial on the merits. *Stone Resources, Inc. v. Barnett*, 661 S.W.2d 148, 151 (Tex.App.—Houston [1st Dist.] 1983, no writ). In a professional malpractice case, the plaintiff must prove: (1) a duty by the professional to act according to a certain standard; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. *See Bradford v. Alexander*, 886 S.W.2d 394, 396 (Tex.App.—Houston 1994, no writ) (medical malpractice case). Both the breach of the standard of care and proximate cause must be proven by expert testimony. *See Pennington v. Brock*, 841 S.W.2d 127, 129 (Tex. App.—Houston [14th Dist.] 1992, no writ) (medical malpractice case). In reviewing the legal sufficiency of the evidence to support the necessary elements, we examine only the evidence that supports the verdict, and we

disregard all evidence to the contrary. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990). If more than a scintilla of evidence supports the verdict, it must be upheld. *Id.* at 228. We now consider the evidence in light of this standard.

Moore called Mrs. Gill and Brown's attorney, David Leuders, to prove the elements of Mrs. Gill's malpractice cause of action. Leuders, an insurance defense lawyer in Houston since 1966, testified that he was familiar with the standard of care for handling personal injury cases in Harris County. Further, he said that the reputations of the doctors that a plaintiff sees affect the settlement value of the plaintiff's case because many injuries cannot be demonstrated objectively and require a jury to believe the testimony of the injured person or his or her doctor.

Leuders testified from personal experience regarding the practices of some of the doctors that Onwuteaka sent Mrs. Gill to see after her accident. He stated that he had dealt with these doctors before, and they were not credible with juries because they ran unnecessary tests and "maximize[d] the bill when it should not be." Leuders said that juries typically discounted the testimony of these doctors, and this resulted in a lower monetary award for the plaintiff.

Leuders had taken Mrs. Gill's deposition and had reviewed some of her medical records in this case. He said that the presence of Onwuteaka and the doctors that he had recommended was a "big minus" with regard to the evaluation of the settlement value of Mrs. Gill's claim by Brown's insurance company because of their reputations and because they unnecessarily ran up the bills.

Leuders had a medical examination service render an opinion about the reasonableness and necessity of Mrs. Gill's bills. He testified that representatives of the service had opined that, of the $26,000 in medical bills that Mrs. Gill had incurred, only $7,200 were reasonably necessary. Leuders testified that he knew that Mrs. Gill had made frequent complaints to Onwuteaka that the doctors that he was sending her to were submitting her to a series of tests rather than treating her problem. Before Mrs. Gill's injuries were properly treated, she was instructed not to see any more doctors because her medicals were already high enough.

Mrs. Gill's counsel asked Leuders to evaluate the settlement value of her claim by assuming the following facts: (1) that Mrs. Gill could establish liability; (2) that her insurance policy was for $100,000; (3) that she was not negligent; and (4) that she would incur $20,000 in legitimate medical expenses if her injuries were properly treated. In response to this question, Leuders said that the settlement value of Mrs. Gill's case would be around $50,000 rather than the $15,000 settlement to which the parties agreed.

Mrs. Gill also testified about the incidents giving rise to her counterclaim against Onwuteaka. Dr. Cornett advised Mrs. Gill that she needed an attorney, and Cornett contacted Onwuteaka's law firm. Julius Pierce, a representative of the firm, met with Mrs. Gill to discuss the possibility of hiring Onwuteaka. Although Pierce was not an attorney, he was twice referred to as an attorney in Mrs. Gill's presence, and he did not rebut these statements. Pierce told Mrs. Gill to be patient, and "when I had my new Mercedes, I would be happy with the way—the way things went."

After Mrs. Gill signed a contract with Onwuteaka, he instructed her to go to a number of doctors and dentists, and she did so. However, she did not agree to all of the tests that the doctors wanted to conduct because she said that they were "invasive type procedures," and she thought that they were unnecessary. Pierce later told Mrs. Gill that she should hold up on further treatment because she had already incurred $25,000 in medical expenses. Despite the tests that Mrs. Gill had undergone, she still had not received treatment for her neck, back, and jaw injuries that she sustained as a result of the accident. She called Pierce to set up an appointment with a doctor to treat these injuries, and he never returned her call. This is what made Mrs. Gill decide to fire Onwuteaka and retain another attorney.

Assuming that Leuders' testimony was sufficient to establish the requisite standard of care and a breach of that standard, we

nevertheless conclude that Mrs. Gill produced no evidence to support a finding that she was injured by the conduct of either Onwuteaka or Pierce. Although Leuders testified that the settlement value of Mrs. Gill's claim was reduced by $35,000 when Onwuteaka sent her to questionable doctors, this was based upon a hypothetical question that assumed that Mrs. Gill would incur $20,-000 in medical expenses if properly treated. Mrs. Gill did not produce expert medical testimony at trial regarding the extent of her injuries, nor did she produce any evidence that her injuries in fact warranted $20,000 in legitimate medical expenditures.

Rule 703 of the Texas Rules of Civil Evidence requires an expert's opinion to be based upon facts or data perceived or reviewed during or before trial. TEX.R.CIV. EVID. 703. The weakness of facts in support of an expert's opinion generally go to the weight of the testimony rather than its admissibility. *Tenngasco Gas Gathering Co. v. Bates,* 645 S.W.2d 496, 498 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Nevertheless, an expert opinion regarding causation that is based completely upon speculation and surmise amounts to no evidence. *See Schaefer v. Texas Emp. Ins. Ass'n.,* 612 S.W.2d 199, 204–05 (Tex.1980) (expert's medical opinion constituted no evidence because it was based upon speculation and surmise rather than reasonable medical probability). We conclude that the evidence in this case is not legally sufficient to support a verdict in favor of Mrs. Gill as to her counterclaim against Onwuteaka for malpractice. There is no evidence in the record of the legitimate medical expenditures necessary for the care of Mrs. Gill's injuries.

We sustain Onwuteaka's fifth point of error, and we hold that the trial court abused its discretion in refusing to grant his motion for new trial. In light of our disposition of this case, we do not consider Onwuteaka's remaining points of error.

In a cross-point, Mrs. Gill requests that we order Onwuteaka to pay damages pursuant to TEX.R.APP.P. 84 because his appeal was frivolous and dilatory. We overrule this cross-point.

We reverse and remand the judgment of the trial court.