Opinion issued November 6, 2008 

 


                   














In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-04-00551-CV
  __________
 
THAO CHAU AND HA DIEN DO, INDIVIDUALLY AND AS NEXT
FRIEND OF THEIR MINOR CHILDREN, S.D. AND H.D., Appellants
 
V.
 
JEFFERSON RIDDLE, M.D. AND GREATER HOUSTON
ANESTHESIOLOGY, P.A., Appellees
 

 
 
On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2002-36481-A




MEMORANDUM OPINION ON REMAND
          Thao Chau and Ha Dien Do, individually and as next friend of their minor
children, S.D. and H.D. (collectively referred to as “the Dos”), appealed the trial
court’s order granting Jefferson Riddle, M.D. and Greater Houston Anesthesiology,
P.A.’s (“GHA”) motion for summary judgment and dismissing the Dos’ claims
against them. In five issues, the Dos argued that (1) the trial court erred in striking
their expert’s affidavit and their second supplemental designation of expert witnesses;
(2) the trial court erred in striking two paragraphs from another expert’s affidavit; (3)
the trial court erred in overruling their objections to the affidavits filed by two
defense experts; and (4) the trial court erred in granting Riddle and GHA’s motion for
summary judgment and dismissing the Dos’ claims. We affirmed the trial court’s
order, based in part on our holding that Riddle was entitled to assert the Good
Samaritan defense, and the Dos petitioned the Texas Supreme Court for review. The
Texas Supreme Court granted the Dos’ petition for review and reversed our judgment
as to whether Riddle had established his entitlement to the Good Samaritan defense
as a matter of law. The Texas Supreme Court remanded the case for us to consider
whether the summary judgment should be affirmed on alternate grounds.  
          We reverse the trial court’s grant of summary judgment in Riddle and GHA’s
favor. Background
          On October 29, 2001, Dr. Jefferson Riddle was an on-call anesthesiologist at
Memorial Southwest Hospital. On this same day, Thao Chau, pregnant with twins, 
went into labor at Memorial Southwest and remained in labor until the morning of
October 30, 2001. Ms. Chau’s obstetrician, Dr. Le, decided to perform an emergency
cesarean section, and Dr. Riddle was called to provide anesthesia for Ms. Chau during
the surgery. After an unsuccessful attempt to use epidural anesthesia, Dr. Riddle
administered general anesthesia to Ms. Chau.
          At 2:46 a.m. on October 30, 2001, S.D. was delivered “floppy,” without any
tone and very pale. The neonatal team took over S.D.’s care, but, after failing to
resuscitate him, Dr. Le asked Dr. Riddle to assist. Dr. Riddle proceeded to intubate
S.D. Afterwards, Dr. Riddle, using a stethoscope, listened and reported hearing
breath sounds in S.D.’s chest. He also reported seeing S.D.’s chest rise. At this time,
the neonatal team proceeded with the resuscitation, and Dr. Riddle returned to Ms.
Chau, who was experiencing bleeding from a uterine atony.


 
          S.D.’s endotracheal tube was secured by a nurse on the neonatal team. Two
members of S.D.’s neonatal team reported hearing breath sounds in S.D.’s chest,
although one other member reported not hearing breath sounds. The neonatal team
started chest compressions as S.D. remained unresponsive. Dr. Ruiz-Puyana, an on-call neonatologist, arrived in the operating room approximately 13 to 15 minutes after
S.D. was delivered and took over efforts to resuscitate him. Dr. Ruiz-Puyana reported
not hearing breath sounds and found that the intubation tube was lodged in S.D.’s
esophagus. Dr. Ruiz-Puyana extubated and re-intubated S.D., at which time his color
improved, but he still did not have a heart rate. Dr. Ruiz-Puyana then administered
medications and afterwards detected a heart rate. S.D. suffered permanent brain
damage due to a lack of oxygen. 
          On July 22, 2002, the Dos brought a healthcare liability suit against Dr. Riddle 
alleging medical malpractice in his care of S.D. The suit also named GHA, Riddle’s
employer, as being vicariously liable for the alleged negligence.


 
          The trial court granted Riddle and GHA’s motion to limit expert testimony to
one witness in each area of expertise. The Dos designated Dr. Ronald Katz as their
sole testifying anesthesiology expert.
          Riddle and GHA moved for both traditional and no-evidence summary
judgments. The motion asserted that there was no evidence that Dr. Riddle was
negligent in his care of S.D. and, in the alternative, if there was a fact issue on this
claim, Dr. Riddle should prevail under a traditional summary judgment because he
proved his Good Samaritan affirmative defense.
          The trial court granted summary judgment to Dr. Riddle and GHA, without
specifying particular grounds, and dismissed the case with prejudice. On remand, we
consider whether the trial court erred in granting Dr. Riddle and GHA’s no-evidence
summary judgment motion. Standard of Review
          Because the propriety of granting a summary judgment is a question of law, we
review the trial court’s decision de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695,
699 (Tex. 1994). 
          In reviewing a no-evidence summary judgment, we “must examine the entire
record in the light most favorable to the nonmovant, indulging every reasonable
inference and resolving any doubts against the motion” to determine whether more
than a scintilla of evidence was presented on the challenged elements of the
nonmovant’s claim. City of Keller v. Wilson, 168 S.W.3d 802, 825 (Tex. 2005). 
More than a scintilla of supporting evidence exists if the evidence would allow
reasonable and fair-minded people to differ in their conclusions. King Ranch, Inc.
v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). “Less than a scintilla of evidence
exists when the evidence is ‘so weak as to do no more than create a mere surmise or
suspicion’ of a fact.” Id. (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63
(Tex. 1983)).        
          The summary judgment rule provides that summary judgment proof must
contain facts that would be admissible in evidence. United Blood Servs. v. Longoria,
938 S.W.2d 29, 30 (Tex. 1997); see also Tex. R. Civ. P. 166a(f). To prove facts
through an interested witness, the testimony must be uncontroverted, clear, positive,
direct, credible, free from contradiction, and susceptible to being readily controverted. 
McIntyre, 109 S.W.3d at 749.    “The relevant standard for an expert’s affidavit
opposing a motion for summary judgment is whether it presents some probative
evidence of the facts at issue.” Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 122
(Tex. 1996). A conclusory statement of an expert witness is insufficient to create a
question of fact to defeat summary judgment. McIntyre, 109 S.W.3d at 749. A party
offering an expert’s affidavit must demonstrate that the witness “possesses special
knowledge as to the very matter on which he proposes to give an opinion.” Gammill
v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex. 1998). Analysis
          To prevail at trial on their claim of medical malpractice, the Dos would have
been required to establish a “reasonable medical probability” that Riddle’s acts or
omissions proximately caused S.D.’s alleged injuries. See Park Place Hosp. v. Estate
of Milo, 909 S.W.2d 508, 511 (Tex. 1995); Duff v. Yelin, 751 S.W.2d 175, 176 (Tex.
1988). Meeting that burden requires proof of the following elements: (1) that Riddle
had a duty to comply with a specific standard of care; (2) that Riddle breached that
standard of care; (3) that S.D. was injured; and (4) that there was a causal connection
between the breach of the standard of care and the injury. See Tex. Rev. Civ. Stat.
Ann. art. 4590i, § 1.03(a)(4) (current version at Tex. Civ. Prac. & Rem. Code Ann.
§ 74.001(13) (Vernon 2005)) (including a cause of action against a physician within
definition of “health care liability claim”); Price v. Divita, 224 S.W.3d 331, 336 (Tex.
App.—Houston [1st Dist.] 2006, pet. denied); Day v. Harkins & Munoz, 961 S.W.2d
278, 280 (Tex. App.—Houston [1st Dist.] 1997, no writ); see also IHS Cedars
Treatment Ctr. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004) (generally stating
elements of negligence claim).
          The causation element of a negligence claim comprises the two following
components: the cause in fact, or “substantial factor,” component and the
foreseeability component. IHS Cedars Treatment Ctr., 143 S.W.3d at 798; Leitch v.
Hornsby, 935 S.W.2d 114, 118–19 (Tex. 1996); Travis v. City of Mesquite, 830
S.W.2d 94, 98 (Tex. 1992). Foreseeability requires that a person of ordinary
intelligence would have anticipated the danger caused by the negligent act or
omission. Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex.
1995). Because both elements are required, a party who establishes only that an injury
was foreseeable cannot prevail. Grider v. Mike O'Brien, P.C., 260 S.W.3d 49, 57
(Tex. App.—Houston [1st Dist.] 2008, pet. denied). 
          Merely showing that S.D.’s injuries would not have occurred but for Riddle’s
alleged negligence is not sufficient. Riddle’s alleged negligence must have been a
substantial factor in bringing about S.D.’s claimed harm. See IHS Cedars Treatment
Ctr., 143 S.W.3d at 799 (citing Lear Siegler, 819 S.W.2d at 472); see also Boys
Clubs, 907 S.W.2d at 477 (explaining that defendant’s conduct may be too attenuated
to constitute legal cause of alleged injury “even if the injury would not have happened
but for the defendant's conduct”) (citing Union Pump Co. v. Allbritton, 898 S.W.2d
773, 776 (Tex. 1995); Lear Siegler, 819 S.W.2d at 472). Accordingly, evidence that
shows only that the defendant’s alleged negligence did no more than furnish a
condition that made the alleged injuries possible will not suffice to establish the
substantial-factor, or cause-in-fact, component of proximate cause. See IHS Cedars
Treatment Ctr., 143 S.W.3d at 799 (citing Boys Clubs, 907 S.W.2d at 477; Union
Pump, 898 S.W.2d at 776; Lear Siegler, 819 S.W.2d at 472).
          Further, the ultimate standard of proof on the causation issue “is whether, by
a preponderance of the evidence, the negligent act or omission is shown to be a
substantial factor in bringing about the harm and without which the harm would not
have occurred.” Kramer v. Lewisville Mem’l Hosp., 858 S.W.2d 397, 400 (Tex.
1993) (stating that the test is whether it is “more likely than not” that the ultimate
harm or condition resulted from the alleged negligence). “Hence, where pre-existing
illnesses or injuries have made a patient’s chance of avoiding the ultimate harm
improbable even before the allegedly negligent conduct occurs—i.e., the patient
would die or suffer impairment anyway—the application of traditional causation
principles will totally bar recovery, even if such negligence has deprived the patient
of a chance of avoiding the harm.” Id.
          Duty

          The Dos argue that the summary judgment evidence raised at least a scintilla
of evidence from which the trial court could conclude that Dr. Riddle had a duty to
comply with a specific standard of care in treating S.D. We agree. In his affidavit
and deposition testimony, Dr. Katz, the Dos’ expert, states that, in his expert opinion
as a board-certified anaesthesiologist, Riddle had a duty to S.D., and that duty
included intubating S.D. within the standard of reasonably prudent anesthesia care,
i.e., properly intubating S.D., personally securing the tube, checking for breath
sounds, and personally checking the end-tidal CO2 to ensure proper placement of the
tube. 
          The record reveals that the evidence before the trial court on summary
judgment, coupled with the Texas Supreme Court’s holding that questions of fact
precluded summary judgment in Riddle’s favor on his Good Samaritan defense,
amount to at least a scintilla of evidence precluding a no-evidence summary judgment
in Riddle and GHA’s favor on the issue of whether Riddle had a duty to comply with
a specific standard of care in treating S.D. 
Breach
          Riddle and GHA contend that the trial court’s entry of summary judgment was
correct because there is no evidence that Dr. Riddle breached any duty he owed to
S.D. Specifically, they point to the testimony of the Dos’ sole expert, Dr. Katz, and
claim that, while Dr. Katz was critical of other aspects of Dr. Riddle’s performance, 
Dr. Katz never offered the specific opinion that Dr. Riddle misplaced S.D.’s
intubation tube. Riddle and GHA point to Katz’s testimony regarding a number of
possible scenarios regarding S.D.’s intubation, which included the possibility that
Riddle properly intubated S.D. and the tube was dislodged during the taping process,
or sometime afterwards. Katz also admitted in his deposition that he could not be
certain the tube was indeed inserted properly in the first place, and then became
dislodged, or whether it was never placed properly at all. 
          Dr. Katz’s testimony, however, when taken as a whole and in conjunction with
his affidavit, reveals that it was his opinion that Dr. Riddle breached the standard of
care by failing to properly intubate S.D., and that Riddle further compounded this
error by failing to personally secure the tube and check for breath sounds, and by
failing to check the end-tidal CO2, which would have confirmed the tube was placed
properly. Katz stated that these errors breached the standard of care and, “in all
medical probability, contributed to the baby’s hypoxia, which caused and resulted in
the adverse outcome and brain damage of [S.D.].” Katz’s testimony was clear that,
even if Riddle had properly inserted the tube, Katz believed that Riddle’s failure to
personally secure the tube and to check the end-tidal CO2 were breaches of the
applicable standard of care. 
          Under the standard we are bound to apply in reviewing a no-evidence summary
judgment, we find this statement was sufficient to defeat Riddle and GHA’s no-evidence motion as to breach because it raises at least a scintilla of evidence in
support of the Dos’ claims that Riddle’s acts and omissions breached the applicable
standard of care. See, e.g., King Ranch, Inc., 118 at 751.
          Causation
          Riddle and GHA also contend that summary judgment in their favor was proper
because Dr. Katz’s testimony on the issues of causation and damages was speculative
and mere conjecture. 
          To constitute evidence of causation, a medical expert’s opinion must rest in
reasonable medical probability. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497,
500 (Tex. 1995); Ins. Co. of N. Am. v. Myers, 411 S.W.2d 710, 713 (Tex. 1966). This
rule applies whether the opinion is expressed in testimony or in a medical record, as
the need to avoid opinions based on speculation and conjecture is identical in both
situations. Crye, 907 S.W.2d at 500. Reasonable probability is determined by the
substance and context of the opinion and does not turn on semantics or on the use of
a particular term or phrase. Id.; Myers, 411 S.W.2d at 713.
          The weakness of facts in support of an expert’s opinion generally goes to the
weight of the testimony rather than the admissibility. Onwuteaka v. Gill, 908 S.W.2d
276, 283 (Tex. App.—Houston [1st Dist.] 1995, no writ). Nevertheless, an expert’s
opinion regarding causation that is based completely upon speculation and surmise
amounts to no evidence. Id.; see also Schaefer v. Tex. Employers’ Ins. Ass’n, 612
S.W.2d 199, 204–05 (Tex. 1980) (holding that expert’s medical opinion constituted
no evidence because it was based upon speculation and surmise rather than
reasonable medical probability). 
          The expert testimony of Dr. Katz, when taken together with his affidavit,
reveals that Dr. Katz’s expert opinion as a board-certified anaesthesiologist was that
Dr. Riddle’s failure to properly insert, secure and check S.D.’s intubation tube, “in
all medical probability, contributed to the baby’s hypoxia, which caused and resulted
in the adverse outcome and brain damage of [S.D.].” Under the standard we are
bound to apply in reviewing a no-evidence summary judgment, we find this statement
was sufficient to defeat Riddle and GHA’s no-evidence motion as to causation
because it raises at least a scintilla of evidence in support of the Dos’ claims that
Riddle’s acts and omissions proximately caused S.D. harm. See, e.g., King Ranch,
Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). 
          Apportionment
          Riddle and GHA next argue that there was no evidence to establish the amount
of harm, if any, that S.D. may have suffered as a result of Riddle’s alleged negligence. 
Riddle and GHA point to Katz’s admission that he could not quantify the amount of
additional damage that S.D. (who was already “floppy” and “unresponsive” at the
time of his birth) may have suffered due to oxygen deprivation caused by Riddle’s
failure to properly intubate him. Dr. Katz admitted during his deposition that there
was “no way” for him to determine the amount of brain damage S.D. may have
suffered before and during his delivery versus the amount of brain damage caused by
the allegedly improper intubation. At his deposition, the following exchange
occurred:
Q: Is it your belief that anyone, regardless of their specialty, can
apportion out the extent of damage to this child in utero versus any
damage which may have occurred extrautero, based upon the medical
information we have?
 
. . . 
 
A: I’m not an expert, but my reaction is I don’t think so.
 
Q: It would be pure speculation, wouldn’t it?
 
. . . 
 
A: I personally think if someone said that they could apportion how
much occurred before and afterwards, I would question them very
closely on “How could you say that? How do you know that?”
 
 I don’t think you can do that. However, I have to tell you that in
other cases that I have reviewed, I have seen neurologists who attempted
to do that. 
 
Q: Utilizing, in your opinion, sound medical judgment?
 
A: Well, I’ve wondered how in the world they could do that, and I
find it hard to believe, but competent neurologists whom I respect have
given such testimony. I don’t see how you can do it, I don’t think it’s
possible, but that is my view as a nonneurologist. 
          Dr. Katz’s affidavit, however, is clear that it is his opinion that Riddle’s
allegedly improper intubation of S.D. “contributed to the baby’s hypoxia and brain
damage” and “there was definitely post-delivery hypoxia; and the acts and omissions
of Dr. Riddle, which were below the standards of reasonably prudent anesthesia care,
caused this post-delivery hypoxia and resulted in brain damage to [S.D.].” Thus, the
state of the summary judgment evidence is that, while Dr. Katz was unable to testify
as to the quantity of damage S.D. may have incurred, it was his opinion that Riddle’s
acts and omissions caused some degree of additional damage. We find this testimony
sufficient to defeat Riddle and GHA’s no-evidence motion for summary judgment on
the issue of damages. See, e.g., King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751
(Tex. 2003). 
                                                         Conclusion
          We reverse the order of the trial court granting summary judgment and remand
this case to the trial court for further proceedings in accordance with this opinion.
                                                              
 

 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Nuchia, Keyes, and Hanks.