

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-20-00244-CV
_____

IN RE LOWELL SCOTT GILBREATH, RELATOR

Original Proceeding
Arising From Proceedings Before the 110th District Court
Floyd County, Texas
Trial Court No. 11,078; Honorable William P. Smith, Presiding

February 8, 2021

MEMORANDUM OPINION

Before PIRTLE, PARKER, and DOSS, JJ.

By this original proceeding, Relator, Lowell Scott Gilbreath, has filed a *Petition for Writ of Mandamus* seeking to compel the Honorable William P. Smith to vacate an *Order of Sanctions* rendered in a dispute with the Real Party in Interest, Brian Pemberton, over farming rights pertaining to certain real property located in Floyd County, Texas. The order bars Gilbreath from presenting any evidence supporting his claim of a common law marriage or other special relationship with Debra Moses, deceased, and it requires him to pay Pemberton $19,949.75 in attorney's fees. Gilbreath presents five issues in support

of his argument that the *Order of Sanctions* should be vacated. By his first issue, he asserts the trial court abused its discretion in finding that he violated section 36.05(a) of the Texas Penal Code (tampering with a witness) because it is based on a misapplication of Texas law. By a two-part second issue, Gilbreath asserts the punishment is not just because (a) there is no direct relationship between the offensive conduct at issue and the punishment assessed and (b) the alleged misconduct did not justify a presumption that his claims lack merit. By his remaining three issues, he contends (3) this court should additionally vacate the order because it failed to consider lesser available sanctions, (4) the attorney's fees award should be vacated because the trial court did not follow current Texas law concerning proof of reasonable and necessary fees, and (5) he is entitled to mandamus relief because the order of sanctions is unjustly excessive and constitutes a clear abuse of discretion. For the reasons expressed herein, we conditionally grant a writ of mandamus.

### BACKGROUND

According to the mandamus record before us, Gilbreath gave Debra Moses refuge from an abusive marriage in 2010. Pemberton is Moses's son. Moses divorced her husband in 2012. Gilbreath asserts he and Moses later became romantically involved, were engaged in 2013, and exchanged vows informally in December 2014. In 2016, he provided financial resources to assist Moses in litigation to acquire real property from a trust of which she was a named beneficiary. Thereafter, they entered into a general farming partnership and the real property Moses recovered in that litigation, the same real property involved in this litigation, became "the lifeblood" of their future. Gilbreath and

2

Moses farmed the land and Gilbreath alleges Moses promised him that he could farm the land for the remainder of his life.

However, unbeknownst to Gilbreath, in April 2017, Moses deeded the property to Pemberton, who is not a farmer, reserving to herself only a life estate. Two years later she died on May 19, 2019. Gilbreath asserts he discovered the conveyance during the probate of her estate and that he and Pemberton entered into an agreement by which Gilbreath would continue to farm the property in 2019, and then have a right of first refusal to purchase the land. Relying on that agreement, in July 2019, Gilbreath prepared the property and planted wheat and later, cotton, and rye. His understanding was that Pemberton had also agreed to allow him to farm the land in 2020. On September 19, 2019, Pemberton sent Gilbreath written notice that he was revoking their prior agreement regarding farming the land for the 2020 crop year. Despite the written notice terminating the prior agreement, Gilbreath continued his farming operations. In the meantime, Pemberton negotiated a farming contract with a third party for the 2020 crop season and obtained a no-trespass order against Gilbreath in December 2019.

On February 19, 2020, Gilbreath filed suit alleging claims of unjust enrichment, quantum meruit, promissory estoppel, beneficiary of fraud, and conversion. Critical to some (but not all) of his claims was the nature of his relationship with Moses—whether they were married or had a special relationship. In response, Pemberton alleged that Gilbreath was his mother's "live-in boyfriend" and that his agreement to farm the land was as a tenant at sufferance pursuant to an unwritten year-to-year lease agreement. He further alleged that Gilbreath misrepresented the relationship with his mother and had made false representations regarding his interest in the property.

3

Relevant to the dispute in this mandamus proceeding is a lengthy telephone conversation between Gilbreath and Sherry Regnier that occurred on September 15, 2019. Regnier was Moses's sister-in-law and Pemberton's aunt. She lives in Boerne, Texas, and she knew Moses for more than forty years. Regnier initiated the call in question to Gilbreath under the guise of retrieving some of Moses's Christmas ornaments and she recorded the call without Gilbreath's knowledge. They conversed generally about Moses and her family and the farming negotiations with Pemberton. Some of the allegedly threatening statements made during the conversation began with Gilbreath stating, "do me a favor." Pemberton maintains that Gilbreath pressured Regnier into withholding testimony or saying, "I don't recall" if called as a witness and questioned on whether he and Moses had a common law marriage or a special relationship. Regnier told Gilbreath that if he and Moses had been engaged or had a common law marriage, Moses would have told her about it. Gilbreath discouraged her from testifying and stated, "[p]lease don't, because I – you know [Gilbreath's lawyer], and you know how ruthless he is." According to Pemberton, Regnier interpreted Gilbreath's comments as a threat to her and her children because the lawyer would "[rip] you-all to pieces up there on that stand" and "they are going to chew you up . . . ." However, after the alleged threats were made, Regnier continued speaking with Gilbreath for a long period of time about Moses, her family, money issues, and the pending suit. Over two and one-half hours later, the call concluded with Regnier saying, "[a]ll right, Hon. Bye."

After becoming aware of the conversation between Gilbreath and Regnier, Pemberton filed a *Motion for Sanctions* alleging that Gilbreath unlawfully tampered with a material fact witness. As authority for his motion, he relied on Rule 215.3 of the Texas

4

Rules of Civil Procedure[1] and section 36.05 of the Texas Penal Code.[2]  He described Gilbreath's conduct as "egregious" and prayed for death penalty sanctions—striking his pleadings, dismissing his claims with prejudice, rendering a default judgment against him, and awarding attorney's fees and costs.

Gilbreath responded that he did not coerce Regnier and that Pemberton's reliance on section 36.05(a) of the Penal Code was misplaced.  He asserted that witness tampering under section 36.05(e-3) required an act of violence as defined in section 71.004 of the Family Code.  He also contested the request for death penalty sanctions as being excessive.

Following a hearing on the *Motion for Sanctions*, the trial court issued a letter ruling reciting the following:  "Motion for Sanctions is Granted.  Gilbreath cannot present any evidence of a marriage to Debra Moses, common law or other."  As requested by the trial court, Pemberton's counsel drafted a proposed order which was objected to by Gilbreath.

On August 18, 2020, the trial court issued its formal *Order of Sanctions*.  Among the findings, the order recites that Gilbreath "committed the offense of witness tampering

---

[1] Rule 215.3 is entitled "Abuse of Discovery Process in Seeking, Making, or Resisting Discovery." TEX. R. CIV. P. 215.3.

[2] Section 36.05(a) of the Penal Code makes it an offense if, with intent to influence a witness, a person confers, or agrees to confer any benefit on a witness or prospective witness in an official proceeding, or he coerces a witness or a prospective witness in an official proceeding to:

    (1)  to testify falsely;
    (2)  to withhold any testimony, information, document, or thing;
    (3)  to elude legal process summoning him to testify or supply evidence;
    (4)  to absent himself from an official proceeding to which he has been legally summoned; or
    (5)  to abstain from, discontinue, or delay the prosecution of another.

TEX. PENAL CODE ANN. § 36.05(a) (West 2016).  Tampering with a witness is a third degree felony. *Id.* at § 36.05(d).

under Texas Penal Code § 36.05 by coercing witness Sherri [sic] Regnier in an official proceeding . . . ."  The order also recites that it was issued by the trial court "under its inherent authority to impose sanctions for abuse of the judicial process."  Another provision in the order recites that Rule 215 of the Texas Rules of Civil Procedure authorizes "[s]anctions that terminate or inhibit the presentation of the merits of a party's claims for decision."  The order continues that Gilbreath is barred "from presenting any evidence of a common law marriage or other special relationship with Debra Moses, deceased."  The trial court also found that Gilbreath's conduct "is an egregious example of the worst kind of abuse of the judicial system . . . ."  According to the order, lesser sanctions were considered and rejected by the trial court.  However, no details or explanation of any lesser sanctions are included in the order.  The order concludes that Pemberton is "awarded reasonable and necessary attorney's fees in the amount of $19,949.75, which shall be paid by [Gilbreath] . . . within 30 days" from August 19, 2020, i.e., September 18, 2020.

On September 17, 2020, this court issued an order granting Relator's request for emergency relief from the September 18 deadline.  *See In re Gilbreath*, No. 07-20-00244-CV, 2020 Tex. App. LEXIS 7698, at *6 (Tex. App.—Amarillo Sept. 17, 2020, order).  By that order, this court requested that Pemberton file a response to Gilbreath's petition for writ of mandamus and address the following issues:  (1) the authority of the trial court to grant Rule 215 sanctions for *discovery abuse* arising from an alleged act of tampering with a witness (emphasis in original), (2) the appropriateness of death penalty sanctions where no court-ordered discovery has been violated, and (3) what, if any, lesser sanctions were considered by the court.  On October 2, 2020, Pemberton filed his response,

ignoring this court's actual inquiry and rephrasing the question as two issues: (1) whether the trial court abused its discretion when it ordered the exclusion of evidence as a sanction and (2) whether the trial court abused its discretion when it ordered Gilbreath to pay Pemberton's attorney's fees? Having received Gilbreath's petition and Pemberton's response, we now address the merits of the *Petition for Writ of Mandamus.*

### STANDARD OF REVIEW—MANDAMUS

Mandamus is both an extraordinary remedy and a discretionary one. *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding). For mandamus to issue, a relator must show that (1) the trial court abused its discretion and (2) no adequate appellate remedy exists to cure the error. *In re N. Cypress Med. Ctr. Operating Co.*, 559 S.W.3d 128, 130 (Tex. 2018) (orig. proceeding); *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam). When seeking mandamus relief, a relator bears the burden of proving these two requirements. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

To establish an abuse of discretion, a relator must demonstrate the trial court acted unreasonably, arbitrarily, or without reference to any guiding rules or principles or supporting evidence. *See In re Garza*, 544 S.W.3d at 840; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). To establish no adequate remedy by appeal, a relator must show there is no adequate remedy at law to address the alleged harm and that the act requested is a ministerial act, not involving a discretionary or judicial decision. *State ex rel. Young v. Sixth Judicial Dist. Court of Appeals*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007) (orig. proceeding). We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments

of allowing a case to proceed to an appealable order. *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding). Furthermore, where a petition seeks to compel the performance of a ministerial act, a relator must also show (1) a legal duty to perform; (2) a demand for performance; and (3) a refusal to act. *Stoner v. Massey*, 586 S.W.2d 843, 846 (Tex. 1979). Here, Gilbreath requests this court to vacate the *Order of Sanctions* entered and order the entry of a new order denying Pemberton's motion for sanctions.

### APPLICABLE LAW

We review a trial court's sanctions order for abuse of discretion. *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004)). A trial court abuses its discretion if it acts without reference to any guiding rules and principles. *Cire*, 134 S.W.3d at 839. We review conflicting evidence favorably to the trial court's decision; however, we are not bound by the trial court's findings or conclusions and must, instead, review the entire record independently to determine whether the trial court abused its discretion. *Brewer*, 601 S.W.3d at 717.

When a sanctions order refers to a specific statute or rule, either by citing the statute or rule, tracking its language, or both, an appellate court is confined to determining whether the sanctions are appropriate under that particular statute or rule. *See Metzger v. Sebek*, 892 S.W.2d 20, 51 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Here, the trial court's order recites that sanctions were authorized under section 36.05 of the Texas Penal Code, Rule 215 of the Texas Rules of Civil Procedure, and under the trial court's inherent power. Accordingly, we will review each theory to determine whether the trial court's imposition of sanctions was justified under any of those theories.

8

## SECTION 36.05 OF THE TEXAS PENAL CODE

By his first issue, Gilbreath contends the trial court abused its discretion in finding that he violated section 36.05(a) of the Texas Penal Code (tampering with a witness) because it is based on a misapplication of Texas law. Section 36.05(a) criminalizes conduct intended to influence a witness if a person . . . *coerces* a witness or a prospective witness *in an official proceeding* through various methods.[3] TEX. PENAL CODE ANN. § 36.05(a). (Emphasis added). Paragraph (e-3) of section 36.05 references coercion of a witness by an actor who commits an act of family violence as defined by section 71.004 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 71.004 (West 2019). That statute defines "family violence" as an act intended to result in physical harm, bodily injury, assault, or sexual assault or a threat that places the family member in fear of imminent physical harm, bodily injury, assault, or sexual assault. *Id.* at (1). Gilbreath maintains there is no evidence of any act or threat of the proscribed conduct. Thus, he reasons the trial court abused its discretion in finding that he engaged in the criminal offense of witness tampering.

Pemberton responds that Gilbreath's argument improperly focuses on the acts or threats prohibited by section 71.004 of the Family Code "as the only grounds for discovery abuse." Pemberton suggests that while use of "discovery sanctions in a civil case does not directly equate to a criminal charge or conviction," section 36.05(a) is "helpful guidance and instruction on the elements of witness tampering."

---

[3] *See infra* n.2.

We disagree with both parties' interpretations. This court has not found, nor have we been cited to, a single civil case in which sanctions were imposed against a party on a finding of tampering with a witness based on a violation of section 36.05(a) of the Penal Code. We conclude that section 36.05(a) was erroneously applied in this sanctions order because it is a criminal statute, intended to punish an actor for the proscribed conduct, when that conduct is established beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014) (citing *Jackson*, 443 U.S. at 318-19)). In its order, the trial court found that "Gilbreath committed the offense of witness tampering." Yet, there was no charging instrument or proceeding at which sufficient evidence was presented to support the trial court's finding that Gilbreath's conversation with Regnier constituted the criminal offense of tampering with a witness.

To support his claim of witness tampering, Pemberton refers this court to "multiple statements . . . intended to coerce [Regnier] into either refusing to testify or actually committing perjury if subpoenaed . . . ." While this court does not condone Gilbreath's choice of words, the conversation between Gilbreath and Regnier, a conversation Regnier initiated, when analyzed independently in its entirety and in proper context, does not lend itself to coercion based on any type of imminent or future physical harm or injury. After the allegedly threatening statements were made, Regnier continued speaking with Gilbreath for a lengthy time on a variety of subjects and she concluded the conversation with a cordial farewell—"[a]ll right, Hon. Bye." Reviewed in its entirety, Gilbreath's conversation is mostly an expression of frustration to Regnier regarding Moses and her family and the dispute with Pemberton. As such, we conclude that section 36.05 of the

Texas Penal Code was not a proper basis for finding that Gilbeath "committed the offense of witness tampering under Texas Penal Code § 36.05 by coercing" Regnier. As such, to the extent that the trial court's order of sanctions was based on a finding that Gilbreath violated section 36.05, the trial court abused its discretion. Our disposition on this theory notwithstanding, we must continue our analysis to determine if the trial court's imposition of sanctions is sustainable under either Rule 215 of the Texas Rules of Civil Procedure or the trial court's inherent power.

### RULE 215 OF THE TEXAS RULES OF CIVIL PROCEDURE

Under Rule 215, a trial court may sanction a party for failing to comply with an order compelling discovery or for abuse of the discovery process. TEX. R. CIV. P. 215. Those sanctions include death penalty sanctions—striking a party's pleadings, dismissing its action, or rendering a default judgment against the party for *abusing the discovery process*. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991). (Emphasis added). In the underlying case, the trial court imposed death penalty sanctions against Gilbreath in that its order completely prohibits the introduction of any evidence supporting Gilbreath's contention that he and Moses were married.

In the prior order for emergency relief,[4] this court requested that Pemberton file a response to Gilbreath's petition for writ of mandamus and address, among other issues, the trial court's authority to grant sanctions under Rule 215 for *discovery abuse* for the alleged act of tampering with a witness. Pemberton filed his response. Gilbreath filed a reply to the response noting that Pemberton did not "squarely" address the issue.

---

[4] *In re Gilbreath*, 2020 Tex. App. LEXIS 7698, at *7.

11

Pemberton argues that section 36.05 "lends helpful guidance and instruction on the elements of witness tampering . . . ." He concludes that the transcript of the telephone call between Gilbreath and Regnier shows that Gilbreath "attempted to threaten Regnier with contempt, hatred, and ridicule on the stand." What Pemberton fails to address is how the conversation between Gilbreath and Regnier resulted in any *discovery abuse*. There is nothing in the record to indicate that Regnier was noticed for a deposition, that she was served with interrogatories, or that she was even subject to a subpoena to testify. There is also no evidence that Gilbreath violated a discovery order or a request for discovery in any fashion. In his reply to Pemberton's response, Gilbreath indicates that none of the provisions of Rule 215 are implicated under the facts of the underlying suit. Therefore, we agree with Gilbreath and conclude that Rule 215 was an improper basis on which to award sanctions against him.

As such, to the extent that the trial court's order of sanctions was based on a finding that Gilbreath violated Rule 215 and the sanctions were imposed as a discovery sanction, the trial court abused its discretion. Again, our disposition on this theory notwithstanding, we must continue our analysis to determine if the trial court's imposition of sanctions is sustainable under the trial court's inherent power.

### TRIAL COURT'S INHERENT POWER

"A trial court has inherent power to sanction bad faith conduct [occurring] during the course of litigation that interferes with administration of justice or the preservation of the court's dignity and integrity." *See Onwuteaka v. Gill*, 908 S.W.2d 276, 280 (Tex. App.—Houston [1st Dist.] 1995, no writ). *See also Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979). Under its inherent power, a trial court may impose

12

sanctions for conduct that may not be covered by any specific rule or statute; however, there must be evidence and findings that the alleged conduct significantly interfered with the court's legitimate exercise of one of its core powers. *See Greiner v. Jameson*, 865 S.W.2d 493, 499 (Tex. App.—Dallas 1993, writ denied). Core powers of the judiciary include hearing evidence, deciding fact issues raised by the pleadings, deciding questions of law, entering final judgment, and enforcing that judgment. *See Island Entm't*, *Inc. v. Castaneda*, 882 S.W.2d 2, 5 (Tex. App.—Houston [1st Dist.] 1994, writ denied). A trial court's inherent power is not, however, boundless. *Brewer*, 601 S.W.3d at 718. The inherent power to sanction is limited by due process, so sanctions must be just and not excessive. *Id.*

As previously noted, Regnier initiated the call to Gilbreath in September 2019, months before suit was filed. At the time of the call, Regnier was not the subject of any discovery or any judicial proceedings involving the trial court's core powers. The first hearing on the parties' competing applications for temporary restraining orders occurred on April 21, 2020. Regnier was not called by either party to testify at that hearing. The only time she ever testified was at the hearing on the motion for sanctions which was held on June 10, 2020. Thus, the alleged threats made by Gilbreath against Regnier in September 2019 could not have significantly interfered with the legitimate exercise of the trial court's core powers. Therefore, we conclude the trial court's inherent power was not a proper basis on which to award sanctions against Gilbreath. Having addressed and rejected each theory relied on for the imposition of sanctions, we find the trial court abused its discretion in ordering the imposition of sanctions in this case. Our conclusion pretermits Gilbreath's remaining issues.

**CONCLUSION**

Having found that the trial court's *Order of Sanctions* cannot be sustained under section 36.05 of the Texas Penal Code, Rule 215 of the Texas Rules of Civil Procedure, or the trial court's inherent power, we conditionally grant Gilbreath's petition for writ of mandamus to vacate the order in its entirety. We will direct the clerk of this court to issue writ only in the event Judge Smith fails to vacate the August 19, 2020 *Order of Sanctions* in its entirety on or before March 8, 2021.

Per Curiam